UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| SPIRE STL PIPELINE LLC, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Cons. Case No. 4:18-cv-01327-RWS/DDN |
| v. ) | |
| ) | THIS DOCUMENT APPLIES TO ALL |
| 3.31 ACRES OF LAND, MORE OR LESS, ) | CASES AND TRACTS |
| SITUATED IN ST. CHARLES COUNTY, ) | |
| STATE OF MISSOURI et al., ) | |
| ) | |
| and ) | |
| ) | |
| MICHAEL STANLEY MINTERT ) | |
| TRUST DATED JANUARY 10, 2003 et al., ) | |
| ) | |
| Defendants. ) | |

### SPIRE STL PIPELINE LLC'S PROPOSED STATEMENT OF FACTS

COMES NOW, Plaintiff Spire STL Pipeline LLC ("Spire"), and for its proposed statement of facts pursuant to this Court's November 13, 2018 Order (Doc. 187), states as follows:

**I.    Spire Is In the Process of Constructing a New Natural Gas Pipeline to Serve the Greater St. Louis Region.**

1.    Spire is a pipeline company formed for the purpose of transporting natural gas to the greater St. Louis region. Declaration of R. English dated October 18, 2018 ("R. English Decl.") at ¶ 4, attached to Spire's Memorandum in Support of its Motion for Preliminary Injunction as Exhibit B (Doc. 89-2).

2.    Spire is constructing a new approximately 65-mile pipeline that will connect with the Rockies Express Pipeline in Scott County, Illinois, travel through Scott County, Jersey County, and Greene County in Illinois and St. Charles County and St. Louis County in Missouri,

and then connect with the Enable Mississippi River Transmission in St. Louis County, Missouri (the "Project"). *Id.*

3. Spire was issued a Certificate of Public Convenience and Necessity by the Federal Energy Regulatory Commission ("FERC") on August 3, 2018 ("FERC Certificate"). (Doc. 1-1).

4. The FERC Certificate authorizes Spire to construct and operate the Project.

5. Spire has contracted with Spire Missouri, Inc., formerly Laclede Gas Company ("Spire Missouri") for the majority of the pipeline's capacity. R. English Decl. (Ex. B) at ¶ 37.

6. Spire Missouri distributes natural gas to approximately 650,000 customers in greater St. Louis. *Id.* (Ex. B) at ¶ 37.

7. Currently, more than 80% of Spire Missouri's natural gas supply comes from a pipeline operated by a competitor of Spire. Declaration of S. Jaskowiak dated October 17, 2018 ("S. Jaskowiak Decl.") at ¶ 9, attached to Spire's Memorandum in Support of its Motion for Preliminary Injunction as Exhibit C (Doc. 89-11).

8. That pipeline is in a high risk zone for earthquakes along the New Madrid fault in southern Missouri, subjecting it to potential disruption. *Id.* (Ex. C) at ¶ 10.

9. In addition, the competitor of Spire offers higher delivered cost of natural gas because it does not have significant access to prolific supply basins in the Appalachian region. *Id.* (Ex. C) at ¶ 11.

10. Changes in the directional natural gas flow from Spire Missouri's current natural gas provider (which is Spire's competitor) has caused and continues to cause Spire Missouri operational difficulties. Through Spire's pipeline, Spire Missouri can ensure adequate pressure of its supply and maximize operations. *See* Spire Missouri's Motion and Answer to MRT in FERC Docket CP17-40.

11. Spire's pipeline will allow Spire Missouri to diversify its natural gas supply by providing access to multiple supply basins and, in turn, will increase the reliability, security, and affordability of Spire Missouri's natural gas supply. Declaration of George Godat ("G. Godat Decl."), ¶ 6, attached to Spire's Memorandum in Support of its Motion for Preliminary Injunction as Exhibit E (Doc. 89-14).

## II. Spire Is Vested with Condemnation Authority under the Natural Gas Act.

### A. Spire obtained a FERC Certificate of Public Convenience and Necessity.

12. Spire applied for a FERC Certificate on January 26, 2017, docket number CP17-40. R. English Decl. (Ex. B) at ¶ 6; Doc. 1-1 ¶ 1.

13. On February 9, 2017, Spire mailed and/or hand delivered landowners located along the pipeline route a notification letter via first class mail informing them of Spire's application and providing directions on how to submit comments or to intervene in the FERC proceedings. R. English Decl. (Ex. B) at ¶ 9.

14. Spire then amended its application on April 21, 2017. *Id.* (Ex. B) at ¶ 7; Doc. 1-1, ¶ 1 n.1.

15. Notice of Spire's application for a FERC Certificate was published in the Federal Register on February 17, 2017, and its amended application was published in the Federal Register on May 5, 2017. *See* R. English Decl. (Ex. B) at ¶ 11; Doc. 1-1, ¶ 15.

16. Landowners then had the opportunity to comment or protest the FERC Certificate following each publication. *See* R. English Decl. (Ex. B) at ¶¶ 9-11.

17. Indeed, the FERC considered a number of comments and intervenor protests, including one submitted by a landowner along the route, before overruling the protests and determining that "Spire has sufficiently demonstrated that the project is needed in the market that

- 3 -

the Spire STL Pipeline Project intends to serve." Doc. 1-1, ¶ 73; *see also* Doc. 1-1, ¶¶ 15-17, 19; R. English Decl. (Ex. B) at ¶ 11.

18. Based on its finding of public necessity, the FERC published its Order issuing the FERC Certificate on August 3, 2018. Doc. 1-1; R. English Decl. (Ex. B) at ¶ 11.

19. Spire filed its acceptance of the Order issuing the FERC Certificate on August 8, 2018. R. English Decl. (Ex. B) at ¶ 12.

20. The FERC Certificate includes certain conditions that Spire must meet. First, Spire must have the pipeline operational and made available for service no later than two years from the date of the FERC Certificate, on August 2, 2020. *See id.* (Ex. B) at ¶ 11.

21. Second, Spire must comply with all environmental conditions set forth in an appendix to the FERC Certificate. *Id.* (Ex. B) at ¶ 54.

22. Finally, Spire cannot deviate from the route approved by the FERC.[1] *See id.* (Ex. B) at ¶ 11; Doc. 1-1, ¶ 265(B).

23. On November 1, 2018, Spire requested that FERC issue to Spire a Notice to Proceed with Construction. *See* Plaintiff's Witness and Exhibit Disclosure (Doc. 184) at No. 46 (November 1, 2018 FERC Request Notice to Proceed [SPIRE_004393-98]).

24. On November 5, 2018, the FERC issued Spire a Notice to Proceed with Construction, stating "[w]e have confirmed the receipt of all federal authorizations relevant to the approved activities," and we "grant your [Spire's] November 1, 2018 request . . . to begin construction activities". *See* Plaintiff's Witness and Exhibit Disclosure (Doc. 184) at No. 47 (November 5, 2018 FERC Notice to Proceed [FERC Docket CP17-40-000, CP17-40-001]).

---

[1] The FERC-approved route is included in the plat maps attached as Exhibit 3 to each Complaint.

- 4 -

25. Spire now has obtained the approvals and satisfied the prerequisites to begin construction of the project.  *See id.* [FERC Docket CP17-40-000, CP17-40-001]; Plaintiff's Witness and Exhibit Disclosure (Doc. 184) at Nos. 51, 52, 53 & 54).

> **B.      Spire has been unable to obtain the necessary easements, despite good faith negotiations with all landowners.**

26. Every easement sought in this action lies along the FERC-approved route from which Spire is prohibited from deviating. *Compare* Exhibit A to Spire's Memorandum in Support of its Motion for Preliminary Injunction (Doc. 89-1) *with* R. English Decl. (Ex. B) at ¶ 15 & its Ex. 1-B *and* Doc. 1-1.

27. Before filing any individual complaint this consolidated action, Spire attempted to obtain the necessary easements through private contracts with the landowners. R. English Decl. (Ex. B) at ¶¶ 17-24.

28. Spire made offers to purchase each easement. *See id.* (Ex. B) at ¶¶ 17-21.

29. Between May 15, 2017, and November 16, 2017, Spire delivered initial offers to landowners in St. Charles County, Missouri, by first class mail and/or hand delivery. R. English Decl. (Ex. B) at ¶ 17.

30. The offers delivered between May 15, 2017, and November 16, 2017 to landowners in St. Charles County, Missouri were made in good faith. *Id.* (Ex. B).

31. Spire also delivered initial offers to landowners in St. Louis County by first class mail and/or hand delivery between October 30, 2017, and December 2, 2017. *Id.* (Ex. B) at ¶ 18.

32. The offers delivered between October 30, 2017, and December 2, 2017 to landowners in St. Louis County were made in good faith. *Id.* (Ex. B).

33. The offers included a plat map showing the proposed easement(s), explanation of the determination of the value(s) offered for the easement(s), a soils map, and proposed agreements for both the easement(s) and certain aspects of construction. *Id.* (Ex. B) at ¶ 19.

34. These offers were made at least eight months before any individual case was filed in this action. *See id.* (Ex. B) at ¶¶ 17-18.

35. During negotiations, Spire also made a final offer to each landowner or landowner's designated attorney or agent by first class mail, email, and/or hand delivery between November 28, 2017, and January 31, 2018. *Id.* (Ex. B) at ¶ 20.

36. In another attempt to avoid litigation, Spire again contacted each landowner or their attorney/agent to reaffirm the final offer between August 7, 2018, and August 27, 2018. *Id.* (Ex. B) at ¶ 21.

37. The offers delivered between August 7, 2018, and August 27, 2018 to landowners were made in good faith. *Id.* (Ex. B).

38. All offers expired before Spire filed suit on each respective tract. Along the pipeline route, Spire has reached an agreement through negotiation to acquire approximately 55 percent of the necessary easements. *Id.* (Ex. B) at ¶ 24.

39. Spire has been unable to reach an agreement with the property owners named in this consolidated action. *Id.* (Ex. B) at ¶ 23.

**III.  Spire has Prepared to Meet All Deadlines Necessary to Construct the Pipeline.**

    **A.  Spire must meet contractual obligations.**

40. Spire conducted an extensive bidding process for the construction of the pipeline. *Id.* (Ex. B) at ¶ 25.

41. After receiving a number of bids, Spire awarded the contract to construct the Project to Michels Corporation ("Michels") based on a combination of price and expertise. *Id.*

42. The Project includes specialized drilling under the Mississippi River and Missouri River known as horizontal directional drilling ("HDD"). *Id.* (Ex. B) at ¶ 5.

43. To drill underneath these rivers, as well as Highway 367 and Spanish Lake Park, HDD is necessary. *Id.* (Ex. B) at ¶ 5.

44. Michels is known in the industry as the premier HDD company, and is one of the most reputable and capable contractors for a pipeline of the magnitude involved in this Project. *Id.* (Ex. B) at ¶ 27.

45. Each of the bidders on the project also included Michels as a subcontractor for the HDD under the Mississippi River and Missouri River. *Id.* (Ex. B) at ¶ 26.

46. Each of the bids was contingent on Michels' availability to perform this HDD portion. *Id.* (Ex. B) at ¶ 26.

47. Michels is both the general contractor on the Project and the subcontractor performing the HDD work, and, as a result, Michels has responsibility for constructing the entire Pproject. *Id.* (Ex. B) at ¶ 25.

48. After receiving the FERC Certificate, Michels informed Spire that it has other obligations and expects a heavy workload in 2019 due to scheduled work for other customers. *Id.* (Ex. B) at ¶ 28.

49. As a result, the contract provides that if Spire does not direct Michels to mobilize for construction by December 15, 2018 (allowing Michels to commence construction by January 15, 2019), Michels can and likely will terminate the contract without any liability to Spire. *Id.* (Ex. B) at ¶ 29.

50. Possession of the easements is a prerequisite to mobilization. *Id.* (Ex. B) at ¶ 30.

51. If and when termination of the Michels contract occurs, Spire must open the Project up for bidding again and begin the contracting process anew. *Id.* (Ex. B) at ¶ 31.

**B.     Spire has made labor investments.**

52. To support construction and operation of the pipeline, Spire has hired 16 employees and consultants to work full time on the project. R. English Decl. (Ex. B) at ¶ 50.

53. Those employees and consultants have been hired to provide inspection, safety, environmental, public affairs, and other support. *Id.* (Ex. B) at ¶ 50.

54. The total cost of these individuals is $100,000 per week. *See id.* (Ex. B) at ¶ 50.

55. Each week that these employees and consultants cannot perform inspection, safety, environmental, public affairs, and other work for the pipeline continues to cost Spire $100,000 with little return on that investment. *Id.* (Ex. B) at ¶ 50.

56. In addition, Michels has agreed to source at least half of its workforce from local labor unions. As a signatory on the Pipeline Contractors Association ("PLCA") agreement, Michels has agreed that a minimum of 50% of the workforce for the pipeline will be sourced locally such that workers will be hired from unions covering the geographical jurisdiction where the project site is located. *Id.* (Ex. B) at ¶ 51.

57. Michels historically exceeds this minimum and also utilizes local workers for work not covered by the PLCA agreement. *Id.* (Ex. B) at ¶ 52.

58. Spire has also leased office space in Godfrey, Illinois to provide workspace for field personnel in close proximity to construction work. *Id.* (Ex. B) at ¶ 53.

59. This lease expires on April 13, 2019 with an option to renew for two six-month terms. *Id.* (Ex. B) at ¶ 53.

### C. Spire must meet environmental obligations.

60. Pursuant to the FERC Certificate, Spire must adhere to environmental regulations and restrictions, as outlined by the U.S. Fish and Wildlife Service's February 2, 2018 Biological Opinion and by Spire's Conservation Plan, to protect the Indiana Brown Bat, an endangered species. Doc. 1-1, Appendix ¶¶ 17-18; R. English Decl. (Ex. B) at ¶¶ 54-59.

61. Beginning in late March, the Indiana Brown Bat typically begins to migrate to trees located in areas of the Project affected by construction.[2] *Id.* (Ex. B) at ¶ 58.

62. Spire therefore needs to clear all trees and forage area by April 1, 2019 to minimize direct impacts on the bat's habitat.[3] *Id.* (Ex. B) at ¶ 59.

63. Moreover, Spire is prohibited from conducting clearing activities between May 1 and July 31. *Id.* (Ex. B) at ¶ 60.

64. Prior to issuance of the FERC Certificate, FERC performed an environmental assessment of the Project pursuant to the Endangered Species Act ("ESA"). The FERC Certificate contains environmental conditions intended to protect endangered species pursuant to the Congressional mandate reflected in the ESA. Doc. 1-1 at 109, 111-118; R. English Decl. (Ex. B) at ¶¶ 11, 54-61.

### D. Construction must account for the impact of unpredictable weather.

65. The success of Spire's pipeline construction is contingent on conducive weather. Several areas of the pipeline route are located in flood prone zones and therefore, construction is

---

[2] After Indiana bats hibernate for the winter, the species migrate long distances to roost trees, forage, have pups, and bear their young. *See id.* (Ex. B) at ¶ 54, Ex. B-7. Data shows that female maternity colonies of the Indiana bat need at least 10% suitable habitat of trees and foraging area to exist at a given point on the landscape. *See id.* (Ex. B) at ¶ 54, Ex. B-7.

[3] Spire must also satisfy impact-reduction requirements to protect the Northern Long-Eared bat—a threatened species. *Id.* (Ex. B) at ¶ 61. Accordingly, Spire needs to complete tree clearing and landscape grading by Spring 2019. *Id.* (Ex. B) at ¶ 61.

vulnerable to periods of heavy or prolonged rains, as well as the impact of snow melt. *Id.* (Ex. B) at ¶ 41.

66. These rains typically occur in the Spring and oftentimes lead to increased water tables or flooding. *Id.* (Ex. B) at ¶ 42.

67. Due to this flood risk, the FERC Certificate requires Spire to obtain a No-Rise Certification from county floodplain managers, which involves an engineering analysis of all regulatory floodway crossings to assess potential increase flood heights. *Id.* (Ex. B) at ¶ 48.

68. Spire must also develop and file with the FERC Deputy Secretary a Flood Action Plan, outlining the actions Spire will implement when rivers are projected to reach and/or exceed flood storage capacity, for the portion of the Project that will cross lands within levee district states. *Id.* (Ex. B) at ¶¶ 47, 49; Doc. 1-1, ¶ 237; *see also* Doc. 1-1, Appendix ¶ 22.

69. Should flooding delay construction, the Michels contract provides that Michels is entitled to an equivalent extension of time to complete construction and that costs for the delay will be split evenly between Spire and Michels. R. English Decl. (Ex. B) at ¶ 44. These costs include full standby costs of $640,000.00 per day. *See id.* (Ex. B); First Amendment to Contract dated October 9, 2018 at Schedule C-3—Contract Pricing Schedule 2018 (Doc. 89-5) at 13 of 14.

70. If crews are forced to move due to flooding, Spire will incur the full move-around costs. *Id.* (Ex. B) at ¶ 43.  These costs are $488,000.00 per move.  *Id.* (Ex. B) at ¶ 34.

**E.     Spire informed investors on expectations.**

71. Spire has made a large-scale investment into the construction of the pipeline of approximately $63 million to date. Declaration of S. Dudley dated October 17, 2018 ("S. Dudley Decl.") at ¶ 7, attached to Spire's Memorandum in Support of its Motion for Preliminary Injunction as Exhibit D (Doc. 89-12).

72. This expenditure has largely been with the support of investors based on Spire's representations. *Id.* (Ex. D) at ¶ 12.

73. Importantly, Spire and its ultimate parent company, Spire Inc. ("Spire Energy"), conveyed to investors that the pipeline would be in service and generating revenue by late 2019, even considering reasonable delays in obtaining the necessary tracts and running into unforeseen circumstances.[4] *Id.* (Ex. D) at ¶ 8.

74. Spire and Spire Energy also informed the public of this timeline: "[b]ased upon our initial evaluation and work with our contractor, as well as our desire to avoid the added costs of wintertime construction, we anticipate the targeted in-service date will move to late calendar 2019." *Id.* (Ex. D) at ¶ 10.

75. Spire and Spire Energy historically meet and have met target dates and other representations to investors. *Id.* (Ex. D) at ¶ 12.

76. Without the backing of these investors, Spire and Spire Energy would not otherwise be able to effectively raise capital for required energy infrastructure projects that benefit the region. *Id.* (Ex. D) at ¶ 13.

---

[4] Spire also represented to investors that due to delays, it had to move to fiscal year 2019 approximately $15 million that was budgeted for fiscal year 2018. S. Dudley Decl. (Ex. D) ¶ 11.

        Respectfully submitted,

        THOMPSON COBURN LLP

        By */s/ Paul T. Sonderegger*
           Pamela J. Meanes, #47241
           Paul T. Sonderegger, #53095
           Elise N. Puma, #68336
           One U.S. Bank Plaza
           St. Louis, Missouri  63101
           314-552-6000
           FAX 314-552-7000
           pmeanes@thompsoncoburn.com
           psonderegger@thompsoncoburn.com
           epuma@thompsoncoburn.com

        *Attorneys for Plaintiff Spire STL Pipeline LLC*

## CERTIFICATE OF SERVICE

I hereby certify that a true and exact copy of the foregoing was served on all counsel of record and parties electronically via the Court's ECF system on November 16, 2018.

        */s/ Paul T. Sonderegger*