**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION**

| | |
|---|---|
| SPIRE STL PIPELINE LLC, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Consolidated Case |
| v. ) | No. 4:18 CV 1327 RWS / DDN |
| ) | |
| 3.31 ACRES OF LAND, et al., ) | |
| ) | |
| Defendants. ) | |

**REPORT AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE**

This matter is before the Court on the motion of plaintiff Spire STL Pipeline LLC for an order of condemnation and preliminary injunctive relief under Federal Rule of Civil Procedure 65(a). (Doc. 86). Defendants oppose the motion. (Docs. 174-78). The matter was referred to the undersigned United States Magistrate Judge for a report and recommended disposition pursuant to 28 U.S.C. § 636(b)(1). An evidentiary hearing was held on the matter on November 19 and 20, 2018.

For the reasons set forth below, the undersigned recommends that the motion be granted.

**BACKGROUND**

In order to construct a new, 65-mile natural gas pipeline in Missouri and Illinois, plaintiff Spire STL Pipeline LLC ("Spire") seeks to acquire permanent and temporary construction easements through the exercise of eminent domain. (Doc. 1). Spire has brought more than 40 condemnation actions in this district court, involving approximately 150 parcels of land and 120 individuals or entities owning interests in the parcels.

In September and October 2018, this Court consolidated the cases listed in Appendix A of this Report and Recommendation, which subjects all defendants and parcels of property in those listed actions to the disposition of plaintiff's motion for

preliminary injunctive relief and the findings and conclusions rendered in this Report and Recommendation.

Plaintiff Spire would commence construction of the pipeline pursuant to a Certificate of Public Convenience and Necessity issued by the Federal Energy and Regulatory Commission on August 3, 2018.  (Doc. 1, Ex. 1).  The FERC certificate authorizes Spire to construct a 24-inch north-south pipeline to access the natural gas currently transported in the Rockies Express Pipeline ("REX"), a high-pressure, 42-inch east-west pipeline that stretches from the Rocky Mountain natural gas production area in Wyoming and northwestern Colorado through Nebraska, Kansas, Missouri, Illinois, and Indiana to the Appalachian Mountain Basin natural gas production area in Ohio.  (*Id.* at 3; Pl. Ex. 20).  Spire's intended pipeline would begin in Scott County, Illinois, and run through Greene and Jersey Counties, also in Illinois, and through the Missouri counties of St. Charles and St. Louis County to the Spire Missouri facility in St. Louis County.  (Doc. 1, Ex. 1 at 3; Pl. Ex. 3).

The certificate requires that the pipeline be operational by August 2020, that Spire meet certain environmental conditions, and that Spire follow the land route set forth in the certificate without deviation.  (Doc. 1, Ex. 1).  Spire alleges it has negotiated in good faith with landowners to obtain easements, but it has been unable to reach agreements with some property owners.  For these remaining properties, Spire seeks a preliminary injunction authorizing its immediate possession of a total of 140 easements: 50 permanent easements and 90 temporary construction easements.  (Doc. 89).  Spire claims it must gain possession by December 15, 2018, in order to meet its legal and contractual construction deadlines.

The undersigned makes the following findings of fact and conclusions of law regarding the pending motion for preliminary injunctive relief.  The Court has subject matter jurisdiction over these consolidated actions under 28 U.S.C. § 1331 and the Natural Gas Act, 15 U.S.C. § 717f(h).

## ANALYSIS

### I. Authority to Condemn

Certain consolidated defendants argue, and the undersigned agrees, that before this Court may grant Spire's motion for a preliminary injunction and immediate possession of the subject parcels of property, Spire must demonstrate that it has a substantive right to take the property at issue and that the Court must issue an order of condemnation. (Doc. 175) (citing *Columbia Gas Transmission, LLC v. 1.01 Acres of Land,* 768 F.3d 300, 314 (3d Cir. 2014); *Mid-Atlantic Express, LLC v. Baltimore County*, 410 F. App'x 653, 657 (4th Cir. 2011); *Transwestern Pipeline Co. v. 17.19 Acres of Land*, 550 F.3d 770, 777 (9th Cir. 2008) (holding a district court lacks the ability to rule on a motion for preliminary injunction without an order of condemnation); *E. Tenn. Natural Gas Co. v. Sage*, 361 F.3d 808, 822 (4th Cir. 2004); *Northern Border Pipeline Co. v. 86.72 Acres of Land*, 144 F.3d 469 (7th Cir. 1998)).

Spire asks the Court to recognize its authority to condemn defendant's properties pursuant to the Natural Gas Act ("NGA") and the FERC certificate. (Doc. 89 at 10).  The NGA provides in part:

> When any holder of a certificate of public convenience and necessity cannot acquire by contract, or is unable to agree with the owner of property to the compensation to be paid for, the necessary right-of-way to construct, operate, and maintain a pipe line or pipe lines for the transportation of natural gas, . . . it may acquire the same by the exercise of the right of eminent domain in the district court of the United States for the district in which such property may be located, or in the State courts.

15 U.S.C. § 717f(h).  While the NGA does not provide for a gas company's immediate possession of property for the construction and operation of a pipeline, several courts have permitted possession of such properties before the conclusion of the eminent domain proceedings as long as an order of condemnation had been issued, relying on the court's inherent equitable powers.  *See Columbia Gas,* 768 F.3d at 314; *Sage*, 361 F.3d at

3

822, 826[1]; *Guardian Pipeline, L.L.C. v. 950.80 Acres of Land,* 210 F. Supp. 2d 976, 979 (N.D. Ill. 2002).

At present, Spire does not have an interest in defendants' properties that can be protected in equity. Preliminary injunctions are extraordinary remedies, "never awarded as of right." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008). Mandatory injunctions like the immediate possession sought by Spire are "particularly disfavored in law." *Transwestern Pipeline Co.*, 550 F.3d at 776. While this Court may grant equitable relief, it cannot create new substantive rights, and where the NGA is silent on the issue of immediate possession, this Court may only give effect to an existing substantive right. *See Sage*, 361 F.3d at 823.

In accordance with the flexibility and balance demanded by equity jurisdiction, before considering whether Spire has met the standard for a preliminary injunction to allow immediate possession, the Court must first consider whether to issue an order confirming Spire's condemnation authority under the NGA. *See Transwestern Pipeline Co.*, 550 F.3d at 777. A condemnation order would show that Spire is entitled to possession upon the entry of final judgment, and it would confer an interest that can be protected in equity. *See Sage*, 361 F.3d at 824-25. Immediate possession after the

---

[1] *Sage* provides a representative list of district courts that have granted immediate possession to a gas company once it has established its right to condemn under the NGA. *Sage*, 361 F.3d at 827 (citing *Northwest Pipeline Corp. v. The 20' by 1,430' Pipeline Right of Way,* 197 F. Supp.2d 1241, 1245 (E.D. Wash. 2002) ("[w]here there is no dispute about the validity of [the gas company's] actual right to the easement," denying authority to grant immediate possession "would produce an absurd result"); *Guardian Pipeline,* 210 F. Supp. 2d at 979 (immediate possession proper when condemnation order has been entered and preliminary injunction standards have been satisfied); *Northern Border Pipeline Co. v. 64.111 Acres of Land,* 125 F. Supp. 2d 299, 301 (N.D. Ill. 2000) (same); *Williston Basin Interstate Pipeline Co. v. Easement and Right-of-Way Across .152 Acres of Land,* 2003 WL 21524816 (D.N.D. 2003) (same); *Tenn. Gas Pipeline Co. v. New England Power, Inc.,* 6 F. Supp. 2d 102, 104 (D. Mass. 1998) (same); *USG Pipeline Co. v. 1.74 Acres,* 1 F. Supp. 2d 816, 825-26 (E.D. Tenn. 1998) (same); *Humphries v. Williams Natural Gas Co.,* 48 F. Supp. 2d 1276, 1280 (D. Kan. 1999) ("[I]t is apparently well settled that the district court does have the equitable power to grant immediate entry and possession [under the NGA].")).

condemnation order would effect the purpose of preliminary injunctions, as it would not alter the relative positions of the parties.  This procedure would permit Spire to enter the property without waiting for the court's final determination on just compensation,[2] while also giving landowners the opportunity to show the gas company is exceeding the scope of the FERC certificate's authorization, or that it did not attempt to purchase before seeking to condemn the properties.  *See id.*

This Court may issue an order confirming Spire's condemnation authority upon finding that:

(1) Spire holds a FERC certificate authorizing the relevant project,

(2) the land to be taken is necessary to the project and within the scope of the FERC certificate's authority, and

(3) Spire and the landowners have failed to agree on a price for the taking.

*Id.*  Accordingly, in deciding this question, the undersigned has considered only arguments and evidence related to these three statutory conditions.

*1. Spire holds a FERC certificate authorizing the pipeline.*

Spire has submitted a copy of its FERC certificate to the Court, and defendants do not dispute that Spire holds a certificate authorizing the pipeline. (Doc. 1, Ex. 1). Challenges to the issuance of the FERC certificate itself are not properly before this Court.  *Alliance Pipeline L.P. v. 4.360 Acres of Land*, 746 F.3d 362, 365-66 (8th Cir. 2014).  The NGA gives any person 30 days from the Commission's order to apply for a rehearing, and then 60 days from the Commission's decision on rehearing to file a petition to set aside or modify the order with the appropriate court of appeals.  15 U.S.C. § 717r(a)-(b).  Congress' prescribed procedures thus require that any challenge to a FERC order first be brought before FERC itself in a timely petition, and then, if still aggrieved by the order after rehearing, by appealing directly to a United States court of appeals.  "[T]he special judicial review provisions of § 19 are exclusive."  *Alliance*

---

[2] Legal title would pass to Spire upon the payment of the determined compensation. *Sage*, 361 F.3d at 825.

5

*Pipeline L.P.*, 746 F.3d at 366 (citing *Williams Natural Gas Co. v. City of Oklahoma City*, 890 F.2d 255, 261 (10th Cir. 1989)).  Defendants cannot circumvent this exclusive review scheme by collaterally attacking a FERC certificate in this judicial condemnation proceeding.  *Id.*

Although some of the defendants' pleadings and memoranda in opposition to the motion for preliminary injunction include collateral attacks on the FERC certificate, at the hearing, no defendant contested the FERC certificate, and defendants conceded that FERC has issued a certificate that authorizes the taking of land for the pipeline at issue.  The undersigned finds and concludes that Spire holds a FERC certificate authorizing the pipeline over a route across the parcels of land that are the subject of this litigation and that the certificate confers upon Spire eminent domain authority.

> *2. The land to be taken is necessary to the project and within the scope of the FERC certificate's authority.*

Several defendants argue that the proposed easements are outside the scope of the FERC certificate, and that the FERC certificate's eminent domain authority is conditioned on several requirements that have not yet been met.  (Docs. 106-13, 115, 117-36, 138, 143).[3]  However, at the hearing on this matter, Spire produced evidence, and the undersigned finds, that the pre-construction conditions set out in the FERC certificate have all been met, including a letter from FERC to that effect.  (Pl. Ex. 9, FERC's Grant of Notice to Proceed).  Spire also demonstrated that the proposed easements along the entire FERC-approved route are within that route, extensively discussing, with no opposition, every section of the route and the variety of easements FERC determined were necessary to the project along that route.  (Pl. Ex. 4).  Plaintiff also produced documents showing that the offers made to the landowner defendants were for the

---

[3] Defendant Nustar Pipeline Operating Partnership L.P. has asserted that it has a prior existing right of way for public use interest and any order of condemnation may only be issued subject to its prior right. (Docs. 141, 177).  At the hearing, Spire represented that it has settled with NuStar, and NuStar no longer opposes the motion for preliminary injunction.  (Doc. 196).

easements approved by FERC as necessary to the project and along the FERC-approved route. (Ex. 16) (including metes and bounds legal descriptions of the easements made by surveyors).

Accordingly, the undersigned finds that the land to be taken for the pipeline is necessary to the project and is within the scope of the authority granted by the FERC certificate.

*3. Spire and defendants have failed to agree on a price for the taking.*

Multiple defendants admit in their answers that they and Spire failed to agree on a price for the taking, but claim that Spire did not engage in good faith negotiations. (Docs. 106-13, 115, 117-36, 138, 143). The NGA does not itself specifically require that the parties engage in negotiations that are in good-faith, but simply states, in relevant part, that: "When any holder of a [FERC certificate] cannot acquire by contract, or is unable to agree with the owner of property to the compensation to be paid . . . it may acquire the same by the exercise of the right of eminent domain[.]" 15 U.S.C. § 717f(h). Courts are split over whether this language implies that good-faith negotiation is required. *Compare Kern River G. Transmission Co. v. Clark County*, 757 F. Supp. 1110, 1113 (D. Nev. 1990) *with Maritimes & Ne. Pipeline, L.L.C. v. Decoulos*, 146 F. App'x. 495, 498 (1st Cir. 2005) (per curiam).

This Court ought not impose or create an implied obligation where none is expressly required. *Cf. National R.R. Passenger Corp. v. Boston & Maine Corp.*, 503 U.S. 407, 423 (1992) (wherein the Supreme Court refused to interpret language in the Rail Passenger Service Act referring to parties "unable to agree" on a price as a requirement that Amtrak engage in good faith negotiations before seeking a condemnation order). It is sufficient that Spire establish it has been unable to acquire the needed land by contract or agreement with ownership. Spire made offers to each landowner along the pipeline route. At the hearing, Spire's witness testified that approximately 60 percent of the landowners have accepted the offers. The parties all admit that Spire has been unable to acquire all of the parcels of land at issue in this

7

consolidated case by contract or agreement, and, therefore, this condition on Spire's condemnation authority is satisfied.

The undersigned further finds, however, that Spire did engage in good-faith negotiations. Although the Eighth Circuit has not decided the good-faith question, in a recent case it held that *if* "good-faith negotiation" is an implied requirement, an offer for an easement showing how the offer was calculated, and in line with offers that were accepted by many other affected landowners, satisfies this requirement. *See Alliance Pipeline, L.P.,* 746 F.3d at 367-68. Spire's Director of Pipelines, Russell English, testified, and the undersigned finds, that Spire made initial and final offers to the affected landowners via land agents, as well as via mail and e-mail communications, beginning approximately one and a half years before these condemnation actions were filed. These offers included evidence showing how Spire calculated the amount of the offers, which were 40 percent of a market analysis of the land's value for temporary construction easements and 100 percent of the land's value for permanent easements, as well as, for relevant landowners, three times the estimated value of crops for the single year construction would be expected to interrupt the landowner's use. (Ex. 16). As of the date of the preliminary injunction hearing, approximately 60 percent of landowners had accepted those offers. Despite these protracted good-faith negotiations, a large minority of the landowners has yet to agree with Spire on a price for the taking.

At the hearing, certain defendants argued that the current pleadings did not include a claim by Spire to an order of condemnation. Therefore, defendants argue, they have not received due process notice of and a sufficient opportunity to defend against such a claim. This argument is without merit. At the pre-hearing conference, the undersigned informed the parties on the record that the Court would consider plaintiff's right to condemn the properties, and plaintiff's complaint and motion for preliminary injunction both seek such a finding from the Court and appropriate relief for its enforcement.

Defendants have not shown that Spire is exceeding the scope of the FERC certificate's authorization, or that it did not attempt to purchase before seeking to

8

condemn the properties.  The undersigned finds and concludes that each of the NGA's requirements have been met and all parties subject to the pending motion for preliminary injunctive relief have had adequate notice and substantial opportunities to oppose – whether before the FERC or before this Court – Spire's claim to the right to engage in condemnation.

The undersigned hereby recommends that the Court confirm Spire's condemnation authority as described in the FERC certificate and that an order of condemnation be issued.

## II.  Preliminary Injunction

Having found that Spire has authority to condemn the properties, the undersigned now turns to the question of Spire's immediate possession of the subject parcels of real property by preliminary injunction under Federal Rule of Civil Procedure 65.  A party seeking a preliminary injunction must establish "(1) the threat of irreparable harm to the movant; (2) the state of balance between this harm and the injury that granting the injunction will inflict on other parties litigant; (3) the probability that movant will succeed on the merits; and (4) the public interest."  *Rogers Grp., Inc. v. City of Fayetteville*, 629 F.3d 784, 787 (8th Cir. 2010) (quoting *Dataphase Sys., Inc. v. C L Sys., Inc.*, 640 F.2d 109, 114 (8th Cir. 1981)).

None of the four factors "is determinative," and each must be examined "in the context of the relative injuries to the parties and the public."  *Dataphase Sys.*, 640 F.2d at 113.  District courts have discretion to apply the *Dataphase* test in a pragmatic, "flexible" way.  *Richland/Wilkin Joint Powers Auth. V. United States Army Corp of Eng'rs*, 826 F.3d 1030, 1036 (8th Cir. 2016) (citations omitted).  Whether to grant a stay or injunction "militates against a wooden application" of probabilities, because, "[a]t base, the question is whether the balance of equities so favors the movant that justice requires the court to intervene to preserve the status quo until the merits are determined."  *Dataphase Sys.*, 640 F.2d at 113.

Applying the *Dataphase* factors to the facts of this case, the undersigned makes the following findings and conclusions.

### *1. Plaintiff faces immediate and irreparable harm unless possession is granted.*

"[T]he basis of injunctive relief in the federal courts has always been irreparable harm and inadequacy of legal remedies[.]" *Sampson v. Murray*, 415 U.S. 61, 88 (1974) (citations omitted). Demonstrating irreparable harm requires a showing that "the harm is certain and great and of such imminence that there is a clear and present need for equitable relief." *Iowa Utils. Bd. v. F.C.C.*, 109 F.3d 418, 425 (8th Cir. 1996). In many cases, pure "'economic loss does not, in and of itself, constitute irreparable harm[.]'" *Id.* at 426 (citations omitted). However, in the context of another NGA case, the Eighth Circuit noted that economic loss was a factor that weighed in favor of granting a similar preliminary injunction. *Alliance Pipeline, L.P.,* 746 F.3d at 367-68 ("a delay in access to the [landowner's property] could cost [the gas company] as much as $540,000 per day."). Additionally, construction delays and loss of specialized contractors qualify as irreparable harm. *See, e.g., Alliance Pipeline L.P. v. 4360 Acres of Land*, 2012 WL 6963313 at *2-3 (D.N.D. 2012); *Gulf Crossing Pipeline Co. v. 86.36 Acres of Land*, 2008 WL 2465892 at *5 (W.D. La. 2008).

Plaintiff faces contractual obligations related to the pipeline. It has to drill under three bodies of water and a highway in order to successfully construct the pipeline. (Doc. 89 at 6). This requires specialized horizontal directional drilling ("HDD"), and the premier contractor for this type of work, Michels Corporation, has represented it is available only if the project is mobilized with access to the properties by December 15, 2018.[4] (Doc. 86; Pl. Ex. 11). Completion of the pipeline is contingent on this contractor's availability. Spire's president, Scott Jaskowiak, testified, and the undersigned finds, that the drilling under the Mississippi River will be approximately

---

[4] Hearing evidence clarified that a period of 30 days was built into the contract between mobilization and the date actual construction would begin. Accordingly, plaintiff expects actual construction would begin on or before January 15, 2019. (Pl. Ex. 10).

10

6,000 feet long; will be over 150 feet underground; requires starting on both sides and meeting in the middle; and involves avoiding an ammonia pipeline in the same area.  An experienced HDD contractor is essential for these specialized, complex, and hazardous conditions.  Spire has already re-negotiated with Michels once to extend and ultimately had to suspend their construction contract, requiring the payment to Michels of approximately 1.8 million dollars.  The undersigned credits the testimony that Michels is the best available contractor for this kind of work, and that there is a substantial likelihood Michels will be unavailable to begin the project in the latter half of calendar year 2019.  If the preliminary injunction is not granted, plaintiff would have to redo the bidding and contracting process, which would significantly delay the project, possibly to the point that it may not be completed.  (Doc. 89 at 7).

Additionally, plaintiff faces environmental conditions that necessitate a beginning date as soon as possible.  Because of environmental regulations, Spire must clear all trees by April 1, 2019, or it must pause construction until August 1, 2019, to minimize impacting the Indiana bat's habitat.  (Doc. 89 at 8).  It must also account for flood-season, and is hoping to complete construction in flood-prone zones before spring, in order to avoid the substantial costs of move-arounds:[5] $488,000 per move, totalling $976,000 for a full move-around.  (Doc. 89, Ex. 2).  Plaintiff's contract with Michels also imposes a $647,000 stand-by penalty when work is unable to be completed for reasons outside of Michels' control.  (Pl. Ex. 10).  Plaintiff has also made labor investments for the pipeline, securing the services of 16 employees and consultants to provide inspection, safety, environmental, and other support for the project.  These individuals cost $100,000 per week, and this investment generates little return until work on the pipeline commences. (Doc. 89 at 7).

Plaintiff will lose stock value if the project is not completed.  Indeed, the pipeline project is plaintiff Spire STL Pipeline's primary business operation.  (Pl. Ex. 1).  Plaintiff

---

[5] Hearing evidence established that a "move-around" is the effort a contractor must undergo to stop work at a location, collect its equipment, move to another location, and recommence its work.  *Cf., Gulf Crossing Pipeline Co. LLC*, 2008 WL 2465892 at *5.

11

further claims its reputation and the reputation of its parent companies will be harmed if it is unable to have the pipeline operational by late 2019, as it has made representations to that effect to investors and ratepayers. (Doc. 86). Plaintiff hopes to have the pipeline operational for the 2019 winter season and has represented to customers that their gas prices would be lowered. It also claims its parent company will lose stock value.

Several defendants argue that these harms are self-created, and that this fact should tip the balance against it when plaintiff is seeking equitable relief. (Doc. 175). They also claim that the asserted harms are speculative, and note that this proceeding will neither address related properties in the Illinois federal judicial districts,[6] nor three properties that are involved in a re-routing of the pipeline in St. Louis County.[7]

The undersigned notes that plaintiff is working within specific parameters, conditions, and deadlines to complete this pipeline project. Plaintiff has budget constraints that are the product of reasonable business judgment decisions. Plaintiff's attempts to work within these guidelines does not mean it has self-inflicted these harms. On the other hand, plaintiff's claim of reputational harm based on its own previous representations is self-created.

Plaintiff argues that it risks losing its contractor and experiencing numerous weather- and environmental-related delays if Spire's contractor does not receive its mobilization order by December 15, 2018. The undersigned is not persuaded by

---

[6] Plaintiff's natural gas pipeline project that is authorized by the FERC certificate in this case also includes parcels of property that lie in in the territorial bounds of the United States District Courts for the Southern and Central Districts of Illinois. These parcels of property are outside the jurisdiction of this Court and are the subjects of litigation in the Illinois district courts. *See Spire STL Pipeline LLC v. Betty Ann Jefferson et al.*, 3:18 CV 3204 SEM-TSH (C.D. Ill. Aug. 15, 2018); *Spire STL Pipeline LLC v. Turman et al.*, 3:18 CV 1502 NJR-SCW (S.D. Ill. Aug. 15, 2018).

[7] These parcels are the subjects of newly filed cases in this Court, which, although consolidated with the instant action, have not been the subjects of motions for injunctive relief. *See Spire STL Pipeline LLC v. 4.25 acres of land*, 4:18 CV 1850 RWS-DDN (E.D. Mo. Oct. 29, 2018); *Spire STL Pipeline LLC v. 0.98 acres of land*, 4:18 CV 1848 RWS-DDN (E.D. Mo. Oct. 29, 2018); *Spire STL Pipeline LLC v. 2.28 acres of land*, 4:18 CV 1846 RWS-DDN (E.D. Mo. Oct. 29, 2018).

defendants that these are merely speculative harms, but the product of reasonable business judgment, and it finds that they are immediate and irreparable given the numerous components of this pipeline project. The Court's finding of irreparable harm is not conditioned on the specific dates of the Michels contract, but rather the general press of the project timeline and Michels' future unavailability. Accordingly, future, reasonable modifications of the contract in accordance with reasonable business judgment would not negate the Court's finding.

### *2. Defendants will not be substantially harmed if immediate possession is granted.*

Concomitant with plaintiff's right of eminent domain is the certainty that the requested easements will be acquired. The NGA and the Fifth Amendment guarantee that defendants will be justly compensated for the taking of their parcels of land. Defendants have not stated any concrete injury other than the loss of the easements over their land and loss of a growing season, which will definitely occur at some point.

One defendant claims that the easement area from a prior pipeline ruined the soil on his land, and claims that his soil may also be irreparably damaged if the Spire pipeline is constructed. (Doc. 175). This is an argument related to the propriety of the easement being granted at all, and not to the granting of a preliminary injunction. Spire's entitlement to proceed by eminent domain has been granted by the FERC certificate and this defendant's argument is in effect a collateral attack on the FERC certificate, which is not relevant to whether a preliminary injunction should be issued.

Accordingly, the undersigned finds and concludes that defendants will not be substantially harmed if the preliminary injunction is granted. Any prejudice to defendants will be offset by the deposit of a bond 1.5 times the amount of the values of the properties with the Clerk of Court. *See Alliance Pipeline, L.P.,* 746 F.3d at 367-68; (Doc. 89, Ex. 15; Pl. Ex. 23).

### *3. Plaintiff has succeeded on the merits of its claim.*

This is not a typical preliminary injunction proceeding, where the ultimate merits are to be decided at some point in the future.  No merits issues will remain if the Court determines that plaintiff has the right to the easements by eminent domain.  The only issue is the amount of compensation, which will have no effect on plaintiff's possessory right.

### *4. The public interest will be harmed unless possession is granted.*

The Federal Energy Regulatory Commission found that the Spire pipeline was both convenient and necessary to the public.  (Pl. Ex. 5).  With respect to the motion for preliminary injunction, the undersigned agrees.  Based on the evidence presented at the preliminary injunction hearing, the undersigned finds that the use of the natural gas in Spire's pipeline will substantially benefit the more than 650,000 customers of Spire Missouri, the corporate customer of plaintiff Spire STL Pipeline LLC in the greater St. Louis region.  (Pl. Ex. 17).  Moreover, the undersigned is persuaded that the availability of natural gas to the St. Louis region is substantially burdened by a variety of supply and pressure issues that were discussed in detail by plaintiff's witnesses, George Godat and Scott Jaskowiak.  St. Louis is a capacity-constrained natural gas marketplace, and it receives the majority of its natural gas from the Mississippi River Transportation (MRT) pipeline, which runs from the state of Louisiana to St. Louis, past the New Madrid fault line in Southeast Missouri.  (Pl. Exs. 18-22).  Additionally, under its present supply arrangement, Spire Missouri must supplement its natural gas supply at peak times with propane, which burdens its customers' equipment as it raises the BTU of the natural gas, and which also increases costs.

According to Mr. Jaskowiak, within the last ten years, the Rocky Mountain Express pipeline (also known as the "REX") was completed, which is a high-pressure, bi-directional pipeline that supplies natural gas across the United States from both the Rocky Mountains and the Appalachians.  (Pl. Exs. 18, 20).  The Appalachian area currently produces the most natural gas in the United States, while sources along the Gulf

14

of Mexico coast have dwindled significantly. Spire is seeking to diversify its natural gas supply by connecting to the REX, and it estimates that doing so would save between 24 and 36 million dollars a year in natural gas costs. Mr. Jaskowiak, who is also a Vice President of Spire, Inc., testified that because Spire Missouri is a pass-through natural gas company, it passes directly to its customers the cost of the natural gas it acquires. Thus, savings achieved by construction and use of the intended Spire pipeline would be reflected in customer rates.

Plaintiff Spire has shown that its customer, Spire Missouri, currently contracts with a competitor to obtain natural gas through another pipeline, and if the subject pipeline project is not completed by the winter of 2019, Spire Missouri will have to renew this contract at an increased cost for a period of time. If this happens, instead of rates decreasing for ratepayers in the St. Louis region with the new pipeline, these added costs would be passed on to ratepayers. (Doc. 86 at 4-5).

Spire argues that local labor unions could lose jobs if the Michels Company is unable to perform the pipeline construction contract. (Doc. 89, Ex. 2). The undersigned finds this asserted harm, although possible, is speculative.

On balance, for the above reasons, the construction of the pipeline is strongly in the public's interest. Conversely, substantially delaying or not building the pipeline would harm the public interest and plaintiff.

## RECOMMENDATION

Plaintiff has demonstrated that, under the circumstances, its legal remedy is inadequate. It has demonstrated that it will suffer significant delay and expense if immediate possession is not granted. For this and the other reasons set forth above,

**IT IS HEREBY RECOMMENDED** that the Court sustain the motion of plaintiff Spire STL Pipeline LLC (Doc. 86) and grant the following preliminary injunctive relief:

1.  Issue an Order of Condemnation, declaring that plaintiff Spire STL Pipeline LLC has the authority under the Natural Gas Act, 15 U.S.C. § 717f(h) to condemn the

parcels of property to be acquired by eminent domain as described by plaintiff in the consolidated actions ("subject parcels"); and

      2.      Order that plaintiff may take physical possession of the subject parcels of property and may begin construction of the subject pipeline as soon as it deposits with the Clerk of this Court a surety bond in the amount of $1,100,000.00 (approximately 1.5 times the total value of plaintiff's estimate of just compensation for the subject parcels).

      The parties are advised they have until December 3, 2018, to file written objections to this Report and Recommendation. The opponent of any such objection may file a written response not later than December 6, 2019. The failure to file a timely objection may waive the right to appeal issues of fact.


                                                                                                  /S/   David D. Noce
                                              **UNITED STATES MAGISTRATE JUDGE**

Signed on November 26, 2018.

## APPENDIX A:

4:18-cv-01332-RWS-DDN
4:18-cv-01333-RWS-DDN
4:18-cv-01334-RWS-DDN
4:18-cv-01335-RWS-DDN
4:18-cv-01337-RWS-DDN
4:18-cv-01339-RWS-DDN
4:18-cv-01340-RWS-DDN
4:18-cv-01342-RWS-DDN
4:18-cv-01343-RWS-DDN
4:18-cv-01344-RWS-DDN
4:18-cv-01350-RWS-DDN
4:18-cv-01351-RWS-DDN
4:18-cv-01352-RWS-DDN
4:18-cv-01353-RWS-DDN
4:18-cv-01356-RWS-DDN
4:18-cv-01359-RWS-DDN
4:18-cv-01360-RWS-DDN
4:18-cv-01361-RWS-DDN
4:18-cv-01362-RWS-DDN
4:18-cv-01363-RWS-DDN
4:18-cv-01365-RWS-DDN
4:18-cv-01366-RWS-DDN
4:18-cv-01367-RWS-DDN
4:18-cv-01368-RWS-DDN
4:18-cv-01369-RWS-DDN
4:18-cv-01370-RWS-DDN
4:18-cv-01371-RWS-DDN
4:18-cv-01372-RWS-DDN
4:18-cv-01373-RWS-DDN
4:18-cv-01382-RWS-DDN
4:18-cv-01391-RWS-DDN
4:18-cv-01519-RWS-DDN
4:18-cv-01520-RWS-DDN
4:18-cv-01522-RWS-DDN
4:18-cv-01523-RWS-DDN
4:18-cv-01531-RWS-DDN
4:18-cv-01533-RWS-DDN
4:18-cv-01691-RWS-DDN
4:18-cv-01692-RWS-DDN