UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| SPIRE STL PIPELINE LLC, | ) |
| | ) Cons. Case No: 4:18-CV-01327 |
| Plaintiff, | ) |
| | ) This Document applies to: |
| v. | ) Case: (4:18-CV-01344) |
| | ) |
| 3.31 ACRES OF LAND, MORE OR LESS, | ) Tract No. MO-SC-312.000 |
| SITUATED IN ST. CHARLES COUNTY, | ) |
| STATE OF MISSOURI et al; | ) |
| | ) |
| Defendants. | ) |

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO QUASH AND/OR FOR PROTECTIVE ORDER**

Plaintiff, Spire STL Pipeline LLC ("Spire"), submits this Response in Opposition to Defendant's Motion to Quash and/or for Protective Order.

## ARGUMENT

On Friday, June 19, 2020, counsel for Defendant notified the undersigned that she would not agree to cooperate in producing either Virginia Schaeffer ("Schaeffer") or Ranae Eberhart ("Eberhart") for deposition to testify as to matters relevant to this proceeding. Counsel for Spire sought to take the depositions of Schaeffer and Eberhart in order to inquire, *inter alia*, into the terms of Exclusive Option Agreement ("Agreement") and Addenda to the Agreement between Schaeffer and Central Land Company LLC d/b/a Diamond Land ("CLC").

Based on deposition testimony provided by Mr. Nathan Laps, one of the owners of CLC, Eberhart was identified as the only person who could testify as to a wide range of issues dealing with the terms of the Agreement and Addenda, including the following:

- At page 44, lines 1-5 Mr. Laps was asked what triggers his right to compensation and how much compensation he would receive, and his answer was "it's – I believe it's different. That's – Ranae handles a lot of that . . . ."

- At page 80, line 9 through page 81, line 5 Mr. Laps was asked specific questions about compensation, assuming he was successful in obtaining $3 million in damages, specifically: "does the option agreement actually spell out how much you will get as a percentage of the ultimate recovery?" His answer was "that's something that would – Ranae would know, our administrative coordinator. I don't – I don't know for sure on – I can't – to my recollection, I can't remember."

- At page 81, line 8 through page 82, line 5 Mr. Laps was asked about paying Mr. Berning's—the soil scientist—fee and he said he was responsible for paying it. When asked if he knew how much had been paid his response was "I don't get involved – I'm not sure on that.  I don't get involved in that part.  That would be Ranae."

- At page 101, line 9 through page 102, line 5 Mr. Laps was asked whether there was a separate written agreement regarding compensation with Ms. Elefant's firm and his answer was "I guess she'll have to – I'll have to ask Ranae on that one." The witness was also asked who signed the agreement on behalf of the landowners and he said "that's probably a question for Ranae, but I'm assuming the – whoever the owners are."

- At page 130, lines 4-13 Mr. Laps was asked about paying Ms. Howard's—the real estate appraiser—fee and he said he was responsible for paying it. When asked if he knew how much had been paid his response was "I'd have to get with Ranae on that one. I'm not positive."

- Paragraph 15 of the Addendum provides that "should Landowner need an attorney for . . . litigation legal representation . . . including the legal costs associated with the litigation initiated by Spire STL Pipeline LLC in the United States District Court for the Easter (SIC) District of Missouri, 4:18 CV 1327 DDN . . . *Central shall pay the costs and expenses of such legal work*, including but not limited to court costs, costs of necessary experts, deposition costs, and other costs associated with the legal work*, but only if landowner uses counsel with whom Central has negotiated a special reduced rate* exclusively for this project." At page 133 line 3 through page 134, line 20 Mr. Laps was asked questions about payment of Ms. Elefant's fee and his response was "I don't know the exact – I guess I should rephrase that answer. I don't know the exact arrangement, but in our option, we pay for the legal cost." A follow-up question was "that would be set forth in the option agreement that we're going to have to talk to Ranae about?" His answer was "yes."

2

As shown above, Mr. Laps identified Eberhart as the person who knows administrative details about the Agreement and Addenda and Spire is certainly entitled to inquire into CLC's obligation to pay fees and the extent of its control of the litigation which, again, affects Mr. Laps' tendency to be honest and to testify truthfully. Mr. Laps' control of the litigation through control of counsel, which in turn can directly affect his compensation, are all issues that Spire should be entitled to inquire about.[1]

As is clearly demonstrated by the topics identified above, Eberhart has information relating not only to the compensation CLC will receive, but to issues beyond the compensation agreement such as the amount of money that has been paid to experts hired by CLC on behalf of Defendant and payment of legal expenses.[2]

With regard to Schaeffer, the Exclusive Option Agreement, dated October 14, 2018, is purportedly signed by Dennis and Virginia Schaeffer.  Mr. Schaeffer died on June 18, 2019, only 8 months after the Agreement and the Addenda were purportedly signed. At the time of his death he was 91 years old. One issue Spire should be permitted to investigate is whether due to their age either Virginia or Dennis Schaeffer even understood the terms of the Exclusive Option Agreement at the time they signed (Mr. Schaeffer being 91 and Ms. Schaeffer is now 94).  Their grandson, Mr. Tyler Schaeffer, an attorney with the local law firm of Carmody McDonald who entered his appearance on her behalf in this matter, see Doc. # 19, may have been involved in

---

[1] Due to the overlapping issues, Spire incorporates by reference as though fully set forth the arguments contained in Spire's Motion to Compel and Memorandum in Support (Doc. # 439 and 440) and Reply in Support.

[2] Defendant's Motion to Quash, however, conflates two issues. Whether Spire is entitled to take the deposition of a witness who clearly has relevant information about the relationship between CLC and Ms. Schaeffer is a different issue from whether Defendant can be compelled to produce an unredacted copy of the Exclusive Option Agreement and the Addenda between CLC and Ms. Schaeffer.

counseling them so Spire understands there may be an attorney-client privilege issue, but Spire should be permitted to determine whether the signature on the Exclusive Option Agreement is her signature and whether she understood the terms of the agreement. Spire is willing to do this by a deposition on written questions and has discussed that option with Tyler Schaeffer.

In an effort to secure Schaeffer's and Eberhart's testimony, immediately following Defendant's counsel's communication that she would not cooperate in producing either witness, counsel for Spire served a Notice of Deposition on counsel for Defendant for the depositions of both Schaeffer and Eberhart.

With regard to Eberhart, it is Spire's position that because CLC employed Ms. Elefant and Eberhart works for CLC, Ms. Elefant was in the best position to secure Eberhart's attendance but, understanding Ms. Elefant's position regarding testimony, counsel for Spire retained a private process server to serve a subpoena on Eberhart in Ohio.

The process server, Kimberly Daily, KSD Process Service, attempted to serve the subpoena on June 19 and 20, 2020. On one occasion when she attempted service a person she believes to be Mr. Laps and another male subject approached her in a very aggressive manner, took photographs and videos of her and yelled at her in an aggressive manner saying "you're going to regret this!". *See* **Exhibit 1** (Affidavit of Kimberly Daily). As a result of this interchange, the process server refused to make further efforts to serve Eberhart and counsel for Spire retained the services of another process server who also attempted to serve process in advance of the June 26, date set for the deposition.

The second process server, John Miller, reports that when he went to the address identified to serve Eberhart it was apparent that someone was home because lights were on and a TV was on but no one came to the door. *See* **Exhibit 2** (Affidavit of John Miller). Only on Monday, June 29, did counsel for Defendant provide confirmation that she has now directed

4

Eberhart to cooperate in accepting service but because the date for the deposition has passed, the offer to cooperate in accepting service is ineffective.

## CONCLUSION

For the foregoing reasons, Spire respectfully requests that the Court deny Defendant's Motion to Quash and/or for Protective Order, permit Spire to proceed with the depositions of Schaeffer and Eberhart for the reasons stated, and grant such other relief as is just and proper under the circumstances.

Respectfully submitted,

HAMITON WEBER LLC

**/s/ David T. Hamilton**
David T. Hamilton     #28166
John H. Kilper         #60992
Jared Howell           #67332
200 North Third Street
St. Charles, MO  63301
(636) 947-4700 (Phone)
(636) 947-1743 (Facsimile)
dhamilton@hamiltonweber.com
jkilper@hamiltonweber.com
jhowell@hamiltonweber.com

ATTORNEYS FOR PLAINTIFF
*Spire STL Pipeline*

## CERTIFICATE OF SERVICE

The undersigned certifies that a true and correct copy of the foregoing document was served this 2nd day of July, 2020, by Notice of Electronic Filing pursuant to Fed.R.Civ.P. 5(b)(2)(E), to:

Carolyn Elefant, Esq. *pro hac vice*
1440 G Street, NW
Washington, DC 20005
Carolyn@carolynelefant.com
*Counsel for Defendants Dennis H. Schaeffer Trust Dated March 2, 1995 et al.*

/s/ David T. Hamilton