UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| SPIRE STL PIPELINE LLC, | ) |
| | ) Cons. Case No: 4:18-CV-01327 |
| Plaintiff, | ) |
| | ) THIS DOCUMENT APPLIES |
| v. | ) TO CASE:  (4:18-CV-01344) |
| | ) |
| 3.31 ACRES OF LAND, MORE OR LESS, | ) Tract No. MO-SC-312.000 |
| SITUATED IN ST. CHARLES COUNTY, | ) |
| STATE OF MISSOURI et al; | ) |
| | ) |
| Defendants. | ) |

PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S
MOTION TO EXCLUDE TESTIMONY OF EXPERT APPRAISER COREY SELL

Plaintiff Spire STL Pipeline LLC ("Spire"), by counsel, submits this Response in Opposition to Defendant's Motion to Exclude Testimony of Expert Appraiser Corey Sell (Doc. # 455, 456).

INTRODUCTION

Defendant has moved to exclude the report and opinion testimony of Spire's expert appraiser Mr. Corey Sell ("Mr. Sell").

Defendant does not challenge Mr. Sell's qualifications as an expert real estate appraiser. Defendant does not challenge Mr. Sell's reliance on comparable sales or underlying appraisal methodology.  Defendant does not challenge Mr. Sell's valuation of the Schaeffer parcel before the imposition of the easements.  Defendant does not challenge Mr. Sell's value of the permanent easement.  Defendant does not challenge Mr. Sell's value of the temporary easements.

Nevertheless, Defendant would have the Court completely exclude Mr. Sell from testifying because he (a) purportedly relied on an unsigned easement agreement to determine the rights and obligations of the parties, (b) allegedly failed to comply with the Uniform

Standards of Professional Appraisal Practice ("USPAP") and (c) found zero damages to the remainder. *See* Deft's Memo. in Supp. ("Memo") (Doc. # 456), p. 1.

Defendant does not explain how, if at all, Mr. Sell's alleged errors render his opinions on the value of the permanent and temporary easements invalid.

Defendant's challenges go to the weight of his testimony, not admissibility, and Defendant's arguments demonstrate a fundamental misunderstanding of the law. The Court should deny Defendant's motion to exclude.

## STANDARD OF REVIEW

Federal Rule of Evidence 702 ("Rule 702") governs the admission of expert testimony in federal court. *Lauzon v. Senco Prods., Inc.*, 270 F.3d 681, 686 (8th Cir. 2001). Rule 702 "favors admissibility if the testimony *will assist the trier of fact*." *Clark ex rel. Clark v. Heidrick*, 150 F.3d 912, 915 (8th Cir. 1998) (emphasis supplied). "Decisions concerning the admission of expert testimony lie within the broad discretion of the trial court." *Anderson v. Raymond Corp.*, 340 F.3d 520, 523 (8th Cir. 2003).

## ARGUMENT

I.   **Spire's Response to Defendant's Point A That "Spire's [*sic*] Opinion is Not Relevant Because He Relied on The Terms of An Unsigned Easement Agreement, an Assumption That is Both Erroneous as a Matter of Fact and Missouri Law."**

Defendant seeks to prevent Mr. Sell from testifying in this proceeding because he made certain "assumptions" based on an unexecuted easement agreement. Deft's Memo, pp. 5-6. Specifically, Defendant claims Mr. Sell "made many assumptions about the scope of rights conveyed based on terms of the unexecuted easement with the Schaeffers, including access to cross, [] restoration [], [] obligation to pay for crops, [and] other assumptions regarding

easement."[1]    Deft's Memo, pp. 5-6.   Defendant posits that because Mr. Sell derived his understanding of these rights from an unexecuted copy of an easement agreement, the Court should exclude his "opinion".[2]

For example, Defendant takes issue with regard to Mr. Sell's "assumption" that Spire's rights are limited to the following:

> Construct, operate, maintain, access, lay, reconstruct, install, realign, modify, replace, improve, alter, substitute, inspect, patrol, repair, abandon in place and remove at will, in whole or in part, a pipeline and appurtenant facilities such as below-ground mains, pipelining, valves, service connections and above-ground structures for the transportation and distribution of natural gas and all other purposes incident thereto.

Deft's Memo, p. 6.[3]

---

[1] Defendant misrepresents the actual record in this proceeding. Mr. Sell testified a third party provided him with the easement agreement to prepare an initial appraisal for use in pre-suit settlement negotiations with the landowners.  Deft's **Exhibit 2**, 20:18 to 21:5, 28:15-20.  The *draft* report was prepared in November 2017 and never finalized.  *Id.* at 21:6-9, 21:17-24, 22:14-19. After Spire commenced this condemnation proceeding, Mr. Sell appraised the Schaeffer parcel again and issued an appraisal in the form of Deft's **Exhibit 1** in February 2020. Mr. Sell did not include the unexecuted easement agreement with the February Appraisal.  Mr. Sell also did not make any "assumptions" with respect to "obligation to pay for crops", for example, as Defendant claims.  Rather, Mr. Sell specifically disclaimed inclusion of crop value: "*we have not* accorded or allocated any separate consideration to crop value or any value associated with other natural growth items situated on the subject property, if any. With respect to the permanent and/or temporary easement areas, these values are, necessarily, inherent within and subsumed by the value of the land." *Id.* at p. 11 (emphasis supplied).

[2] It is unclear which "opinion" Defendant is challenging.  Defendant simply claims "[b]ecause Sell's *opinion* turns on an easement agreement that was never executed, his *opinion* is unsupported by fact and irrelevant and must be excluded under *Daubert*."  Deft's Memo, p. 6 (emphasis supplied). Regardless, as set forth herein, Mr. Sell's *opinions* are relevant, reliable, and therefore admissible.

[3] As a preliminary matter, Spire requested the Court to enter a Final Order and Judgment of Condemnation on January 31, 2020.  *See* Doc. # 379.  The proposed Final Order and Judgment of Condemnation set forth the interests acquired and Spire's rights to the easement.  However, *Defendant objected to Spire's request*. *See* Doc. # 399. Thus, there has been no entry of a Final Order and Judgment of Condemnation.  It seems hardly proper for Defendant to complain about this issue when Defendant objected to Spire's request for the Court to define the parties' rights in and to the easement.

Defendant cites *State ex rel. Missouri Highway & Transp. Com. v. Cowger*, 838 S.W2d 144 (Mo. App. E.D. 1992), claiming the "maximum injury rule" applies in this case and, therefore, Mr. Sell "was required to assume that Spire would make the maximum use of the rights granted under the easement." Deft's Memo, p. 6.  In *Cowger*, the appellate court explained, "the maximum injury rule is used only in the *absence* of detailed construction plans which limit the condmenor." 838 S.W2d at 146-47 (emphasis original).  The maximum injury rule did not apply in *Cowger* because "the design plans were entered into evidence without objection, and show the nature and extent of the land taken and the location of the highway improvement to the remaining property . . . ." *Id.* at 147.

The maximum injury rule does not apply in this case.  Spire attached to its Complaint the FERC Certificate. *See* Doc. # 1 (4:18-CV-01344), Exhibit 1; *see also* Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes.").  The FERC Certificate identifies, *inter alia*, Spire's FERC Application with detailed construction plans, Environmental Assessment, and Upland Erosion Control, Revegetation, and Maintenance Plan.[4] These documents detail the scope of the construction project, easements necessary for the completion of the project, Spire's post-construction obligations with regard to restoration, monitoring and revegetation, and rights of the landowners following installation of

---

[4] A true and correct copy of the FERC Certificate was also attached to Spire's Motion to Exclude (Doc. # 452), **Exhibit 1**, incorporated herein as though fully set forth.  In addition, a true and correct electronic copy of the Environmental Assessment and Upland Erosion Control, Revegetation, and Maintenance Plan is contained in Spire's footnotes 2 and 3, respectively, in its Memorandum of Law in Support of its Motion to Exclude (Doc. # 453), incorporated herein as though fully set forth.

the pipeline.[5]  Spire will present evidence at trial detailing the nature and extent of the land taken and rights of the parties in and to the easement area.

Moreover, in valuing the permanent easement, Mr. Sell did not solely rely on the unexecuted easement agreement to determine the rights impacted by the pipeline.  Rather, Mr. Sell also considered the easement plat, legal descriptions of the easements and "*a number of factors including, but not limited to*, present use of the easement area, future use of the easement area, building and zoning restrictions, access considerations, market perception as reported by participants, and the remaining use and utility of the property within the easement area."  *See* Deft's **Exhibit 1**, p. 21-23 and 27. (Emphasis supplied).

To satisfy the reliability requirement under Rule 702, the party offering the expert testimony "must show by a preponderance of the evidence both that the expert is qualified to render the opinion and that the methodology underlying his conclusions is scientifically valid." *Barrett v. Rhodia, Inc.*, 606 F.3d 975, 980 (8th Cir. 2010). Defendant does not challenge Mr. Sell's qualifications and concedes Mr. Sell's underlying appraisal methodology—Sales Comparison Approach—was proper.  His opinions are therefore reliable.

Defendant only challenges Mr. Sell's "opinion" based on relevancy. An expert opinion is relevant if it "will assist the trier of fact to understand the evidence or to determine a fact in issue."  Rule 702; *see also Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 591, 113 S. Ct. 2786, 125 L. Ed. 2d 469 (1993).  In this case, the issue is the amount of just compensation owed to Defendant for the taking of the permanent and temporary easements. Defendant does not challenge

---

[5] *See e.g.,* Environmental Assessment, Section A.8.5 ("Active cropland would be allowed to revert to pre-construction use for the full width of the right-of-way.").

Mr. Sell's value of the permanent easement ($7,933) or temporary easements ($6,213).[6]  As such, Mr. Sell's "assumptions" based partially on the easement agreement, even if incorrect, do not render his opinions on the value of the permanent or temporary easements invalid under the circumstances. *See e.g.*, *Cashman v. Allied Prods. Corp.*, 761 F.2d 1250, 1255 (8th Cir. 1985) (holding testimony was admissible even though some opinions were based in incomplete assumptions).

The crux of Defendant's challenge, as far as Spire can discern, centers on Mr. Sell's assessment of no damage to the remainder.  Specifically, in finding no damage to the remainder, Defendant claims it was improper for Mr. Sell to "assume", based on the unexecuted easement agreement, that Spire would "restore the surface of the ground disturbed by their use of the permanent easement and temporary work space areas, whether during initial construction or later, to substantially the same condition as its prior condition."  Deft's Memo, p. 6 (citing Mr. Sells' deposition testimony discussing page 28 of his Appraisal).  However, Defendant's counsel asked Mr. Sell at deposition, "[i]f the easement agreement had not been signed, would this statement about restoration still be accurate" to which Mr. Sell responded: "***Yes, because it's the intention of Spire***." Deft's **Exhibit 2**, 54:10-14 (emphasis supplied). This is consistent with Spire's legal obligations under the FERC Certificate, Environmental Assessment and Upland Erosion Control, Revegetation, and Maintenance Plan with regard to post-construction restoration, monitoring and revegetation. *See* Spire's Memorandum in Support of Motion to Exclude (Doc. # 453), pp. 5-9, incorporated herein as though fully set forth.

Further, Mr. Sell had an ***independent basis*** to support no damage to the remainder. As Mr. Sell explained, "based upon our knowledge, experience, review of peer-published studies

---

[6] This is not surprising because Mr. Sell valued the temporary easements $1,813 more than Defendant's appraiser, who valued the temporary easements at $4,400 (rounded).  *See* Spire's **Exhibit 10** (Howard Report), p. 20. Spire attached Ms. Howard's report to Spire's Memorandum in Support of Motion to Exclude (Doc. # 453, 454) as Exhibit 10.

regarding the impact of pipeline easement on property values, and those factors previously mentioned, we do not believe the value of the area outside the easement is diminished to any extent by the location of the easement area relative to the area outside the easement.  Despite the location of the proposed permanent easement, the subject property can continue to be utilized for agricultural purposes."  Deft's **Exhibit 1**, p. 29.  Thus, Mr. Sell's opinion does not "turn[] on an easement agreement that was never executed," as Defendant suggests.  This is not the case, unlike Defendant's experts, *see* Spire's Memorandum in Support of Motion to Exclude (Doc. # 453), Sections E and F, pp. 17-26, where Mr. Sell's opinions are "*so fundamentally unsupported that it can offer no assistance to the jury.*" *Synergetics, Inc. v. Hurst*, 477 F.3d 949, 956 (8th Cir. 2007) (explaining "so long as the methods employed are scientifically valid, Appellants' mere disagreement with the assumptions and methodology used does not warrant exclusion of expert testimony.") (Emphasis supplied).

B.     **Spire's Response to Defendant's Point B That "Mr. Sell's Opinion Is Unreliable Because His Finding of Zero Damages to the Remainder Is No Longer Accepted by the Relevant Community or In the Peer Reports that Sell Cited."**

"To satisfy the reliability requirement, the party offering the expert testimony 'must show by a preponderance of the evidence both that the expert is qualified to render the opinion and that the methodology underlying his conclusions is scientifically valid." *Barrett v. Rhodia, Inc.*, 606 F.3d 975, 980 (8th Cir. 2010) (quoting *Daubert*, 509 U.S. at 589-90).

Defendant claims, without challenging Mr. Sell's qualifications, that his "opinion that a pipeline that runs through agricultural land has zero impact on the remainder deviates from general and growing consensus that partial takings for gas pipelines have impacts to the remainder of the property."  Deft's Memo, p. 7.

First, Defendant claims *Appraisal of Real Estate Guide* (14th Ed.), a book published by Appraisal Institute, undermines Mr. Sell's finding of no damage to the remainder simply because "a property that enjoys the benefits of an easement gains additional rights, while a property that is subject to an easement is burdened."  Deft's Memo, pp. 7-8.[7]  This argument misses the mark. The section cited by Defendant is the basic definition of an easement.  Of course a property that is subject to an easement is burdened, which is why Mr. Sell estimated compensation for the rights acquired by Spire. Whether or not ***damages to the remainder*** exist is an entirely different discussion and something that is specific to a given property.

Specifically, as demonstrated by the references to the peer-reviewed articles contained in Mr. Sell's report, whether damage to the remainder exists is to be determined on a cases-by-cases basis taking into consideration several factors, including whether the taking changes the highest and best use of the property. *See* Deft's **Exhibit 7(b)**, p. 4 (*The Valuation of Easements* by Mr. Don Sherwood: "Damages resulting from a temporary or permanent easement are difficult to measure. A key question is whether the easement affects the use and/or utility of the property that results in a change in highest and best use."); *see also* Spire's **Exhibit 26**[8], *Appraising Pipeline Easements, A Practical Approach* (explaining damage to the remainder may be proper when there is "1) change in highest and best use; 2) increased cost or restrictions on existing uses; and 3) limits on future development or use.").

Based on his knowledge, experience and review of the peer reviewed articles, Mr. Sell assigned no damage to the remainder because he found, ***inter alia***, Defendant still utilizes the

---

[7] Defendant does not attach a copy of the book but cites Amazon.com in footnote 2 where the parties and the Court can presumably purchase the book to verify to truth and accuracy of the information cited.

[8] Spire's Exhibits attached hereto follow the exhibits in sequential order attached to Spire's Motion to Exclude and Memorandum in Support [Doc. #'s 452-454].

property for agricultural purposes following the installation of the pipeline and, thus, no change in the highest and best use.  Deft's **Exhibit 1**, p. 29; *see also* Spire's **Exhibit 27** (Deft's Answer to Third Interrogatories), ¶ 24 (in which Defendant confirmed "the parcel is still used for farming and Defendant *will not claim that it can no longer be used for farming*.") (Emphasis supplied); and Spire's **Exhibit 10** (Howard Report), p. 8 (finding no change in highest and best use following installation of the pipeline).

Indeed, Ms. Howard conceded the presence of pipelines encumbering agricultural property in north St. Charles County does not affect market value, which supports Mr. Sell's opinion that there is no damage to the remainder. The following colloquy occurred at Ms. Howard's deposition:

> Q.    On your first comparable sale on page 9 of your appraisal report, there's a reference to that property being encumbered by I believe a gas pipeline and ammonia pipeline; is that right?
>
> A.    Yes.
>
> Q.    And what was the sale price for that comp?
>
> A.    $10,136 per acre.
>
> Q.    Did you conclude that the existence of the gas pipeline and the ammonia pipeline on your first comparable sale negatively impacted market value of that property?
>
> A.    No, I did not.
>
> Q.    Similar question with regard to your second comparable sale on page 10. That one is also encumbered by a gas pipeline. Is that accurate?
>
> A.    Yes.
>
> Q.    Did you conclude that the sale price of your second comparable sale was negatively impacted by the existence of that gas pipeline on the property?

9

       A.     No.

Spire's **Exhibit 11** (Howard Depo.), 65:8 to 66:5. Ms. Howard testified, consistent with Mr. Sell,
that whether a pipeline influences the market value of property is determined on a case-by-case
basis, considering the effects on the utility, functionality or features of the specific property at
issue. *Id.* at 31:3 to 33:8.

       Defendant next cites various cases in Missouri claiming Mr. Sell's report is "out of step
with trends under Missouri law." Deft's Memo, p. 8. Only one case involved the exclusion of an
expert opinion, *Glaize Creek Sewer Dist. V. Gorham*, 335 S.W.3d 590, 593-94 (Mo. App. E.D. 2011).
*Glaize*, however, ***did not involve a pipeline***, but a sewer easement. In addition, the appellate
court analyzed the admissibility of expert testimony based on then Missouri law, not the
Federal Rules of Evidence. Further, the expert in *Glaize* assessed $0.00 in damages based on
***visual observation alone*** with no data to support the opinion. *Id.* at 594-95. This case is clearly
distinguishable from *Glaize*.

       *City of Maryland Heights v. Heitz*, 358 S.W.3d 98 (Mo. App. E.D. 2011) and *St. Charles City v.
Olendorff*, 234 S.W.3d 492 (Mo. App. E.D. 2007) also did not involve pipelines or evidentiary
issues relating to remainder damages, and are not helpful to Defendant or relevant to this case.

       The only cases Defendant cites that involved pipelines are *Wood River Pipeline Co. v. Sommer*,
757 S.W.2d 265, 267 (Mo. App. E.D. 1988) and *Missouri Pipeline Co. v. Wilmes*, 898 S.W.2d 682, 685
(Mo. App. E.D. 1995). However, both experts in those cases assessed no damage to the
remainder and there were no issues with the admissibility of those opinions.

       Mr. Sell bases his opinion of no damage to the remainder on sufficient facts or data, his
opinion is the product of reliable principles and methods, and it is clear he has reliably applied

the principles and methods to the facts of the case.  His opinion is therefore reliable, admissible and Defendant is free to cross-examine Mr. Sell at trial on this issue.

C.   **Spire's Response to Defendant's Point C That "Mr. Sell's Opinion Is Unreliable Because He Made and Did Not Disclose Extraordinary Assumptions in Violations of USPAP."**

Defendant posits that Mr. Sell should have identified Spire's obligation to "restore the property" as an "extraordinary assumption" because it is possible "Mr. Sell is wrong" and "Spire has already finished restoration." Deft's Memo, p. 9.[9]

Spire's obligation to "restore the property" is not an extraordinary assumption. This is because Spire is legally obligated to continue post-construction monitoring, restoration and revegetation within the easement in accordance with the FERC Certificate, Environmental Assessment and Upland Erosion Control, Revegetation, and Maintenance Plan.  *See* Spire's Memorandum in Support of Motion to Exclude (Doc. # 453), pp. 8-15, incorporated herein as though fully set forth.[10]

---

[9] Defendant also misrepresents the deposition testimony of Mr. Sell, claiming he "acknowledges extra cost to landowners that [*sic*] would change the outcome of his opinion." Deft's Memo, p. 9. Mr. Sell testified that if there was a change in soil productivity or composition such that the property's highest and best use changed, then there may be an impact on value. *See* Deft's **Exhibit 2**, 81:22 to 82:12.  That is not the case, however, because the pipeline has not caused a change in the highest and best use of the property.  *See* Deft's **Exhibit 1**, p. 29.

[10] Even if this was an extraordinary assumption, Mr. Sell had a reasonable basis for "assuming" Spire would comply with the FERC Certificate.  Defendant claims the deposition testimony from Spire's representatives contradicts Mr. Sell's "assumption". Once again, Defendant misrepresents the record. Spire's corporate representatives testified that Spire will, in accordance with the FERC Certificate, Environmental Assessment and Upland Erosion Control, Revegetation, and Maintenance Plan, continue to monitor restoration and revegetation within the right-of-way for post-construction issues. Spire's **Exhibit 8** (D. Sipe Depo.), 79:20 to 80:13, 82:2-20, 92:6 to 93:24.  If a landowner reports a condition within the right-of-way to Spire, Spire will investigate the condition and cure any identifiable defects caused by the installation of the pipeline. Spire's **Exhibit 9** (R. English Depo.), 30:13 to 31:4, 35:5-14, 36:21 to 37:3.

Even assuming, *arguendo*, Spire's obligation to continue post-construction monitoring, restoration and revegetation within the easement is an extraordinary assumption, strict compliance with USPAP is not a precondition to admissibility.

Defendant cites *Whitehouse Hotel L.P. v. Comm'r*, 615 F.3d 321, 332 (5th Cir. 2010) and *Kilbride Invs. Ltd. v. Cushman & Wakefiled of Pa., Inc.*, 2018 U.S. Dist. LEXIS 72221 (E.D. Pa. April 26, 2018) to support the proposition that non-compliance with USPAP is sufficient grounds to exclude Mr. Sell's opinion. Neither case aids Defendant.

In *Whitehouse*, the Court of Appeals for the Fifth Circuit explained compliance with USPAP is "relevant to the ***weight***" of the expert's opinion, not admissibility. 615 F.3d at 332 (emphasis original). Similarly, in *Kilbride*, the district court explained that even if the expert failed to comply with USPAP, the expert's opinion was sufficiently reliable. 2018 U.S. Dist. LEXIS at *19-24.

Thus, even if Spire's obligation to "restore the property" was an extraordinary assumption under USPAP and Mr. Sell failed to identify the obligation as an extraordinary assumption, Mr. Sell's alleged non-compliance with USPAP is not grounds to strike Mr. Sell's opinion because his opinion of no damage to the remainder is sufficiently reliable and, therefore, admissible. Defendant, of course, is free to cross-examine Mr. Sell's opinion at trial.

## CONCLUSION

For the reasons stated herein, Spire respectfully requests that the Court enter an Order denying Defendant's Motion to Exclude the testimony of Mr. Sell, and grant such other and further relief as is just and proper under the circumstances.

Respectfully submitted,

HAMILTON WEBER LLC

/s/ David. T. Hamilton
David T. Hamilton        #28166
John H. Kilper           #60992
Jared Howell             #67332
200 North Third Street
St. Charles, MO  63301
(636) 947-4700 (Phone)
(636) 947-1743 (Facsimile)
dhamilton@hamiltonweber.com
jkilper@hamiltonweber.com
jhowell@hamiltonweber.com

ATTORNEYS FOR PLAINTIFF
*Spire STL Pipeline LLC*

## CERTIFICATE OF SERVICE

The undersigned certifies that a true and correct copy of the foregoing document was served this 8th day of July, 2020, by Notice of Electronic Filing pursuant to Fed. R. Civ. P. 5(b)(2)(E), to:

Carolyn Elefant, Esq. *pro hac vice*
1440 G Street, NW
Washington, DC 20005
Carolyn@carolynelefant.com
*Counsel for Defendants Dennis H. Schaeffer Trust*
*Dated March 2, 1995 et al.*

/s/ David. T. Hamilton