UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| SPIRE STL PIPELINE LLC, | ) |
| | ) Cons. Case No: 4:18-CV-01327 |
| Plaintiff, | ) |
| | ) THIS DOCUMENT APPLIES |
| v. | ) TO CASE:  (4:18-CV-01343-SRC-DDN) |
| | ) |
| 3.31 ACRES OF LAND, MORE OR LESS, | ) Tract No. MO-SC-307.000 |
| SITUATED IN ST. CHARLES COUNTY, | ) |
| STATE OF MISSOURI et al; | ) |
| | ) |
| Defendants. | ) |

**PLAINTIFF'S RESPONSE IN OPPOSITION TO
DEFENDANTS' MOTIONS IN LIMINE**

Plaintiff Spire STL Pipeline LLC ("Spire") submits its Response in Opposition to Alan and Sharon Poggemoeller's ("Defendants") Motions in Limine [Doc #476].

## INTRODUCTION

Defendants' first Motion in Limine seeks to prohibit Spire from offering evidence of its ongoing obligations under the FERC Certificate to continue monitoring and reporting post-construction restoration of the right-of-way, and to take additional steps to further restore conditions within the right-of-way if necessary.  Defendants' first Motion in Limine should be denied. Evidence of Spire's obligations with respect to post-construction monitoring and ongoing remediation activities goes to the heart of the Commissioners' ability to determine whether "definite and certain" evidence exists to support Defendants' claim for diminution in market value allegedly due to construction-related damages[1], and is also relevant to establishing

---

[1] Defendants are claiming the right to recover damages for alleged on and off right-of-way injury to their property as an independent element of compensation. Spire has filed a separate motion seeking to exclude consideration of those alleged damages because Defendants are not entitled to receive such damages as an independent element of damage separate and apart from the diminution in market value. Defendants may be entitled to consider such damages if and only if

Spire's lawful rights and future obligations to monitor, inspect, maintain, and if necessary repair the right-of-way.

Defendants' second Motion in Limine seeks to exclude the report and testimony of Spire's expert appraiser, Corey Sell, premised on arguments Defendants raise in their separate Motion to Exclude. Defendants' second Motion in Limine should be denied for all the same reasons discussed in Spire's Response in Opposition to Defendants' Motion to Exclude, which reasons are incorporated herein by reference.

## ARGUMENT

I. **Response to Defendants' Motion in Limine No. 1 Seeking to Exclude Evidence of Spire's Ongoing Obligations under the FERC Certificate**

For their first Motion in Limine, Defendants assert Spire should be prohibited from introducing evidence regarding Spire's ongoing responsibility to monitor restoration and revegetation of the right-of-way post-construction, report issues regarding restoration to FERC, and correct restoration-related issues if necessary (collectively referred to herein as the "Post-Construction Obligations"). In support of their request to exclude this evidence, Defendants argue that (A) Spire has made inconsistent statements about the status of restoration, and (B) permitting evidence of Spire's obligations with respect to future monitoring and restoration would violated Defendants' rights under the Fifth and Seventh Amendments.

A. **Spire Never Represented to FERC or Defendants that Post-Construction Restoration Was Completed.**

Defendants assert Spire previously represented that it was finished with all restoration and remediation of the right-of-way, and therefore should be barred from introducing evidence of its Post-Construction Obligations. Defendants suggest Spire has been "deceiving the Court

---

such damages affect market value. Spire addresses the issue of Spire's obligation to continue to remediate because the ongoing remediation obligation directly affects before and after market value and is a factor that would be taken into consideration by a reasonable purchaser.

into thinking [restoration] was 'complete' and allowing the Defendants to detrimentally rely on these representations to the Court in the production of their evidence." *See* Defts' Motion, p.6.

Defendants' assertion, however, is premised on misconstruing statements made by Spire's counsel during Case Management Conferences with the Court on December 6, 2019 and January 7, 2020, as well as status reports filed with FERC on January 7, 2020, and July 10, 2020.

As a preliminary matter, a thorough discussion of the approvals Spire had to obtain from FERC to proceed with the pipeline construction, and Spire's obligations under the FERC Certificate, including a discussion of its Post-Construction Obligations related to restoration can be found in Part A of Spire's Memorandum in Support of its Motion to Exclude [Doc.475], which is incorporated herein by reference.

With respect to the issue of ongoing post-construction monitoring and restoration in particular, the record is clear—the Certificate FERC issued to Spire permitting it to operate, and to maintain the right to continue operating, the pipeline is contingent on compliance with the Environmental Conditions prescribed therein. *See* Spire's **Exhibit A** (Certificate, p. 82). Environmental Condition No. 1 requires Spire to follow the mitigation measures described in its Application and as identified in the Environmental Assessment ("EA") for the project, which incorporates the Upland Erosion Control, Revegetation, and Maintenance Plan ("Plan"). *See id.* at Appendix p. 95.[2]

---

[2] The EA is comprised of 470 pages. The EA is a document created and maintained by an agency of the United States and is of public record. Due to the size of the document, Spire directs this Court to a true and correct electronic copy of the EA, available on FERC's website at: *https://elibrary.ferc.gov/idmws/search/fercadvsearch.asp* (last visited June 22, 2020). The EA was issued on September 29, 2017 in docket CP17-40.

The Plan is also a document created and maintained by an agency of the United States and is of public record. To minimize the number of exhibits to this Motion, Spire respectfully directs this

Pursuant to the EA, Spire must "document restoration and revegetation of the right-of-way and other disturbed areas." EA, Section A.8.4. Spire *must* also "monitor upland areas after the first *and second* growing seasons following restoration *or until revegetation is successful in accordance with the Plan*" and to "file quarterly monitoring reports with the FERC to document the status of revegetation in disturbed areas." (Emphasis added). *Id.* Similarly, Spire *must* "visually inspect agricultural land *to ensure that crop vigor* in areas affected by construction *is similar to* adjacent portions of the same field, or as otherwise agreed to by the landowner." *Id.* at Section B.5.1. (Emphasis supplied).

The Plan similarly outlines procedures for restoration and post-construction monitoring, maintenance, and reporting. *See* Plan, Sections V and VII. Regarding monitoring revegetation, the Plan requires Spire to "conduct follow-up inspections of all disturbed areas, as necessary, to determine the success of revegetation and address landowner concerns. *At a minimum, conduct inspections after the first and second growing seasons*." Plan, Section VII.A.1 (emphasis supplied). The Plan directs Spire to "[c]ontinue revegetation efforts until revegetation is successful," and to also monitor and address problematic issues with drainage. Plan, Section VII.A.2 and A.3. Indeed, the Plan clearly states, "*[r]estoration shall be considered successful if the right-of-way surface condition is similar to adjacent undisturbed lands, construction debris is removed, . . . revegetation is successful, and proper drainage has been restored*." Plan, Section VII.A.4.

Importantly, *all of these documents* are a matter of public record and have been for quite some time—certainly before either the December 2019 or January 2020 Case Management

---

Court to a true and correct electronic copy of the Plan, available on FERC's website at: www.ferc.gov/industries/gas/enviro/plan.pdf (last visited June 22, 2020).

Conferences. Thus, the fact Spire is legally obligated to perform restoration in accordance with the Plan until restoration is successful, or be subject to civil penalties and revocation of the Certificate, is no secret and is information that has been equally available to Defendants.

### 1. Statements By Spire's Counsel

It is in light of this background that Spire addresses Defendants' assertion about Spire Counsel's prior representations during Conferences with the Court. First, courts have consistently held that statements made by counsel are not evidence. *See Exter Bancorporation, Inc. v. Kemper Secs Group, Inc.*, 58 F.3d 1306, 1312 n.5, 10 (8th Cir. 1995) (counsel's reading of certain potions of transcript and paraphrasing of testimony not evidence, holding "'Statements of counsel are not evidence'" and do not create issues of fact.") (quoting *United States v. Fetlow*, 21 F.3d 243, 248 (8th Cir. 1994)). More to the point, the statements by Spire's counsel at both the December 2019 and January 2020 Case Management Conferences about *construction of the pipeline* being complete are not in any way inconsistent with the fact that Spire still maintains ongoing obligations under the FERC Certificate.

When asked about "status of the *physical construction project*" during the December 6, 2019 Case Management Conference, Counsel for Spire accurately stated that *construction* was 100 percent complete and that there was gas flowing through the pipeline. *See* **Exhibit B** (Transcript of Dec. 6, 2019 hearing), pp. 27:25-28:6. Spire's Counsel went on to explain that post-construction restoration, however, was still ongoing:

> *We are still working on some of the remediation and restoration work*. We anticipate as the property owners get on the property this spring and start farming we will identify some of the nits and gnats that are going to have to be taken care of, Judge. *We continue to work on that*. And FERC requires us to keep them informed as to what we're doing on the restoration work. So both in order to address concerns that the property owners have and to address concerns that the property owners have and to address concerns that FERC has, we're going to be working diligently to make sure that restoration is done, *and we*

> *anticipate that will be continuing on into the spring but hopefully done by then, but the majority of the project is totally complete except for this restoration.*

Id. at 28:12-24 (emphasis added).

After Defendants' Counsel then brought up the scope and timing of future remediation activities, Counsel for Spire again accurately stated that "[t]he majority of it's been done, and its mainly a matter of once the farmers are going to get in the fields in the spring if there are specific issues, but I don't think there's an issue regarding that.  We'll let everybody know as soon as we have.  We believe we've completed all the restoration, Your Honor." Id. at 29:5 to 31:6.  Shortly thereafter, Matt Aplington, in-house counsel for Spire, further confirmed that post-construction restoration was ongoing:

> Your Honor, all of the – good morning.  All of the land has been released back to the owners at this point.  *What we're talking about is very minor items, such as vegetation didn't take enough root this year, that we may need to go back and spread more seed in non-farmed areas, that type of thing.*"

Id. at 30:22 to 31:6.  Contrary to Defendants' assertions, the transcript confirms Mr. Hamilton's statement that "construction was 100 percent complete" was clearly in reference to the Court's question about status of the "physical construction project," and not an affirmative statement that all post-construction remediation work was complete.  In fact, Mr. Hamilton and Mr. Aplington went on to confirm that there were, in fact, additional items to be monitored and potentially fixed in the future.

The same analysis applies to the statements by Counsel for Spire during the January 7, 2020 Case Management Conference as well.  Indeed, when asked by the Court for an update on the status of the *operation of the pipeline*, Counsel for Spire accurately responded that "[t]he status remains the same.  The project is 100 percent complete." See **Exhibit C** (Transcript of Jan.

2020 hearing), 3:9-19.  With respect to post-construction remediation efforts, Spire's Counsel reported:

> [t]here are restoration efforts there that *are still being done*.  It's at halt for now until the ground thaws and we get some warmer weather in, but restoration is pretty much done.  *We will be addressing minor issues with the landowners as they come up in the future*.

*Id*.  Again, contrary to Defendants' assertions, these statements are not representations that Spire had completed all remediation.  On the contrary, they are entirely consistent with Spire's obligations under the FERC Certificate.

### 2. Spire's Status Report to FERC on January 7, 2020

Defendants also rely on a report Spire submitted to FERC on January 7, 2020 in which Spire reported to FERC that restoration *as it related to the construction activity* was complete.  *See* **Exhibit D**.  Defendants, however, misconstrue the record with regard to this report.  Spire submitted the report pursuant to a FERC requirement that Spire file status reports "on a weekly basis until all construction and restoration activities are complete." **Exhibit A** (Certificate), Environmental Condition No. 8. Spire filed weekly status reports, as required, throughout the construction process that summarized construction activity.  Prior to placing the mainline facilities in service, Spire reported to FERC that construction and restoration was complete.  This status report, however, was referring to restoration *during construction*, not post-construction.

> Indeed, to diffuse any uncertainty, Spire explained in Status Report No. 68 that
>
> [r]estoration status *during construction* and as reported in *previously filed construction status reports refers to* the completion of final grade, contours returned to pre-existing conditions (or new contours as otherwise approved), replacement of previously segregated topsoil, and the application of seed and mulch, if necessary, to the right-of-way workspaces. *In accordance with FERC's Upland Erosion Control, Revegetation, and Maintenance Plan, Spire commits to monitoring restoration and revegetation for post-construction*

*issues, reporting any issues identified, and correcting these issues during the post-construction phase of the project.*

See **Exhibit E** (emphasis supplied); *see also* Plan, Section VII.A discussed *supra*. Spire produced a copy of Status Report No. 68 to Defendants in discovery on June 30, 2020. Defendants, however, conveniently omitted any discussion of Status Report No. 68 in their Motion.[3] Contrary to Defendants' assertion, Spire's January 7, 2020 Status Report is not a representation that post-construction restoration work was complete. Regardless, as explained by the district court in *Rover Pipeline, LLC v. 10.055 Acres of Land*, regardless of what Spire "says", this does not vitiate the condemnor's legally enforceable obligations based on the plain language of the Certificate. 2018 U.S. Dist. LEXIS 217574 *21-22 (N.D. Ohio Dec. 28, 2018).

3. <u>Spire's Status Report to FERC on July 10, 2020</u>

Finally, Defendants point to a more recent Status Report dated July 10, 2020, which includes discussion of Defendants' complaint that "the right-of-way is rough with high and low spots which are causing drainage concerns," to argue Spire should be precluded from offering evidence of Spire's obligations regarding post-construction restoration. *See* **Exhibit F**, p.5. As Spire's response to that complaint, the Report states that "[n]o issues with this tract were identified in the field. Spire considers this complaint resolved." *Id.* Although Defendants may disagree with Spire's conclusion about their complaint in the Report, Spire's statement is in no way akin to a representation that all post-construction monitoring and restoration is complete.

---

[3] Spire is in fact required to continue *post-construction* monitoring, restoration and revegetation obligations and there is a *separate reporting requirement* under the Plan. *See* Plan, Section VII.B. ("The project sponsor shall file with the Secretary quarterly activity reports documenting the results of follow-up inspections required by section VII.A.1; any problem areas, including those identified by the landowner; and corrective actions taken for at least 2 years following construction.").

In fact, on page 3 of the July Report, Spire states that "Work Planned for Next Reporting Period," includes continuing "to monitor post-construction restoration and revegetation."

In summary, Defendants' assertions that Spire has been "deceiving the Court into thinking [restoration] was 'complete' and allowing the Defendants to detrimentally rely on these representations to the Court in the production of their evidence," has no merit. Defendants' request that the Court exclude all evidence of Spire's post-construction monitoring and restoration obligations should be denied.

> B. **Permitting Spire to Offer Evidence of its Post-Construction Obligations With Respect to Future Monitoring and Restoration Would Not Violate Defendants' Rights Under the Fifth and Seventh Amendments.**

Defendants also argue that permitting Spire to offer evidence of its Post-Construction Obligations would violate Defendants' rights under the Fifth and Seventh Amendments. Spire will address each argument in turn.

> 1. **Evidence of Spire's Post-Construction Obligations Would Not Violate Defendants' Fifth Amendment Right to Receive Just Compensation.**

Defendants argue permitting the Commissioners to hear about Spire's Post-Construction Obligations would be inconsistent with Missouri law governing compensation in condemnation matters, and thus, also infringe on Defendants' right to "just compensation" under the Fifth Amendment. Defendants' argument is premised on a misunderstanding of United States Supreme Court and Missouri law regarding the award of construction damages in the context of condemnation.

As Defendants correctly note, the Missouri Supreme Court discussed the recoverability of damages related to construction in the context of a partial taking in *KAMO Electric Cooperative, Inc.. v. Baker*, 287 S.W.2d 858 (Mo. 1956), which involved the construction of an electrical

transmission line on agricultural property.  In *KAMO Electric* the Missouri Supreme Court reasoned that:

> [w]hen part of a tract is taken the damages are not limited to such as result from the mere severance of title caused by the taking, but include damages caused by the use of the property for the purpose for which the condemnation is made. Such use embraces the construction of the work or improvement and the maintenance, use and operation of the same.  If the trial of this case had been held before the transmission line had been constructed, it would have been proper for the jury to take into consideration, when supported by evidence, those various factors resulting from the appropriation which were reasonably apparent at that time and which a purchaser willing but not obliged to buy would consider.

*Id.* at 861-62 (internal citations omitted).  However, the Court also held that any evidence concerning the burden at the time of taking resulting from the condemnor's legal use of the right-of-way must be "*definite and certain*," and "reasonably expected to follow from the *lawful invasion* of the premises by the [condemnor]."  The Court explained:

> When there is an appropriation of only a part of a tract of land, lawful and proper uses to be put to the land appropriated may be considered not on the theory that a recovery is to be allowed for speculative risks and contingencies which may never happen, but instead upon the theory that these are matters which affect the market value of the remainder of the land as of the time of the appropriation. The inquiry goes only to the damages sustained by reason of the taking.  *However, it must be presumed that in constructing, patrolling and maintaining the transmission line, appellant will act in a proper and lawful manner.*  Testimony concerning the burden at the time of appropriation resulting from the proper use by the appellant of the right of way *must be definite and certain, and only such depreciation in value may be considered as may be reasonably expected to follow from the lawful invasion of the premises by the appellant, as distinguished from acts, the result of which are purely remote, speculative, and conjectural in their nature, and which are not fairly and reasonably to be anticipated*.

*Id.* at 862 (internal citations omitted; emphasis added).

Thus, under *KAMO Electric* and its progeny, the trier of fact may consider "the use of the property for the purpose for which the condemnation is made," including "the construction of the work or improvement and the maintenance, use and operation of the improvement," *to the*

*extent it bears upon value*. Citizens Electric Corp. v. Amberger, 591 S.W.2d 736, 739 (Mo. Ct. App. 1979) (emphasis supplied). However, any evidence concerning the burden at the time of the appropriation must be "*definite and certain*," versus "*purely remote, speculative, and conjectural in their nature*," and *the fact finder must presume* that "in constructing, patrolling and maintaining the transmission line, [the condemnor] will act in a proper and lawful manner." KAMO Electric, 287 S.W.2d at 818 (emphasis supplied).[4]

As far as Spire can discern, no Missouri case has dealt with a condemnation proceeding where both the scope of the condemner's authority to condemn and obligation to perform post-construction monitoring were governed by FERC. In *KAMO Electric*, for example, the utility company had finished construction of the right-of-way at the time of trial and, while the utility had agreed to repair any fences it may need to take down to access the lines in the future, there was no evidence the utility had any obligation to monitor the area and revegetation following construction, or to cure any identifiable defects within the right-of-way caused by the construction of the utility line. 287 S.W.2d at 861. Thus, evidence that the landowner sustained actual damage to the right-of-way during construction (i.e., truck tracks and tree stumps that were not removed) was admissible at the time of trial. *Id.* at 862-63. *See also Citizens Electric*, 591 S.W.2d at 740 (scope of utility's rights include right to patrol, operate, and maintain the line; no evidence utility had any ongoing obligations with respect to monitoring and taking action to ensure sufficient revegetation of the right-of-way).

---

[4] *See also State ex rel. Missouri Highway & Transp. Comm'n v. Behle*, 863 S.W.2d 898, 900 (Mo. Ct. App. 1993) ("In other words, a foundation must be laid that the construction damages were reasonably foreseeable at the time of the taking and the result of non-tortious acts on the part of the contractors involved. When 'reasonably foreseeable' or 'reasonably apparent' is measured at the time of the taking, which in practice means before construction begins, we construct such terms to mean only those construction damages which are inherent, inevitable, automatic or certain.")

Spire, however, *does have* an ongoing, regulatory-enforceable obligation to monitor the right-of-way in accordance with the FERC Certificate as discussed in Part I(A), above. Evidence of Spire's obligations with respect to post-construction monitoring and ongoing remediation activities therefore goes to the heart of the Commissioners' determination of whether "definite and certain" evidence exists to support Defendants' claim for construction-related damages. This evidence is also categorically relevant with respect to establishing Spire's lawful rights and future obligations to monitor and maintain the right-of-way, and as *KAMO Electric* instructs, the fact finder must assume the condemnor will act in a proper and lawful manner with respect to exercising its rights and fulfilling its obligations. 287 S.W.2d at 818. However, under Defendants' interpretation of Missouri law, they would have this Court permit them to offer evidence of damage to the property caused by construction related activities and how alleged construction-related damages impact value of the property, but prevent Spire from offering evidence of its ongoing obligations to continue to monitor and address restoration-related issues in the future.

Although Defendants may not like that evidence of Spire's Post-Construction Obligations may lead the Commissioners to reduce or reject Defendants' valuation for construction-related damages, the introduction of such evidence *is entirely consistent with* Missouri law and would in no way impact Defendants' right to just compensation under the Fifth Amendment. Indeed, Defendant's Fifth Amendment right to receive just compensation does not include the right to be paid all of the damages they seek in this case. Indeed, taking Defendants' argument to its logical conclusion, Defendants are asking the Commission to award compensation for the same very damages Spire is obligated to pay for and resolve under the Certificate. This would result in a windfall to Defendants.

As with any case, Defendants bear the burden of introducing *admissible* evidence to support their claims for damages to the extent those damages are recoverable under the law. For all the reasons discussed in Spire's Motion to Exclude, Defendants claim for cost-to-restore damages are not recoverable, but in any event, Spire is entitled to offer evidence challenging Defendants' damages claims.

Contrary to Defendants' assertion, permitting the Commissioners to hear evidence of Spire's Post-Construction Obligations would not violate Defendants' Fifth Amendment rights, but would be entirely consistent with Missouri law. Defendants' request to exclude the evidence should be denied.

2. **Evidence of Spire's Post-Construction Obligations Would Not Violate Defendants' Seventh Amendment Rights.**

Defendants also assert that introduction of Spire's Post-Construction Obligations would violate their rights under the Seventh Amendment. The Seventh Amendment provides that "in Suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved . . . ." U.S. Const., Amendment VII. Although difficult to follow, it seems that the crux of Defendants' argument is that by permitting Spire to introduce evidence of its Post-Construction Obligations, this may result in the Commissioners not awarding all of the damages Defendants seek, and that their right to have any future dispute about issues related to alleged damage to the right-of-way resolved by a jury would be infringed.

To be clear, Defendants do not make any claim that their rights to a jury trial under the Seventh Amendment have somehow been infringed in this case, nor could they given that the Court has appointed a Commission to determine just compensation pursuant to Fed. R. Civ. P. 71.1(h). Moreover, the issue of whether Defendants would or would not be entitled to a jury trial in the context of some future statutory or common law claim against Spire is not before the

Court and certainly has no bearing on the admission of evidence in this case. In that regard, although characterized as a Seventh Amendment claim, Spire will assume Defendants' assertion is in essence an expansion of their argument that introduction of Spire's Post-Construction Obligations would infringe on their right to just compensation.

Defendants argue that because there is no easement agreement in place between Spire and Defendants, and because the Natural Gas Act ("NGA") does not provide for a private cause of action under which FERC could award damages to Defendants, this means Defendants would effectively have no remedy if the Commissioners are permitted to hear about Spire's Post-Construction Obligations and choose to discount or not consider Defendants' valuation of construction-related damages.

Defendants' argument does not pass muster. *The purpose of this proceeding is to determine the amount of compensation owed to Defendants for the taking.* Defendants bear the burden of proving in accordance with Missouri law whether they sustained damage. As discussed above, evidence of Spire's commitments with respect to post-construction monitoring and ongoing remediation obligations are central to the Commissioners' determination in this case of whether "definite and certain" evidence exists to support Defendants' claim for construction-related damages,[5] and is also relevant with respect to establishing Spire's lawful rights and future obligations with respect to monitoring and maintenance of the right-of-way.

To the extent Defendants believe they have claims premised on alleged tortious conduct (i.e., negligence), such claims may be the subject of a different action, but should not be considered in this case. *Behle*, 863 S.W.2d at 902. Further, as discussed *at length* above and in Spire's Motion to Exclude, Spire's Certificate requires it to report and respond to complaints received from landowners, as a condition of its authority to operate the pipeline—authority

---
[5] See footnote 1, above.

FERC retains jurisdiction to revoke if there is non-compliance. *See* Plan, Section VII.A.1 ("Conduct follow-up inspections of all disturbed areas, as necessary, to determine the success of revegetation *and address landowner concerns*."). More to the point, Defendants have failed to offer any valid basis in support their request to exclude evidence of Spire's Post-Construction Obligations *in this case*.

II. **Response to Defendants' Motion in Limine No. 2 Seeking to Exclude the Report and Testimony of Spire's Expert Appraiser Corey Sell**

For their second Motion in Limine, Defendants seek to exclude the report and testimony of Spire's appraiser, Corey Sell. Defendants' Second Motion in Limine should be denied because Mr. Sell's report and testimony is admissible for all the reasons discussed in Spire's Response in Opposition to Defendants' Motion to Exclude, which are incorporated herein by reference.

## CONCLUSION

Defendants fail to raise any valid basis for prohibiting Spire from introducing evidence of its Post-Construction Obligations as requested in their first Motion in Limine. Defendants' second Motion in Limine fails for all the reasons discussed in Spire's Response in Opposition to Defendants' Motion to Exclude. All of Defendants' Motions in Limine should therefore be denied.

Respectfully submitted,

HAMILTON WEBER LLC

/s/ David T. Hamilton
David T. Hamilton   #28166
John H. Kilper      #60992
Jared Howell        #67332
200 North Third Street
St. Charles, MO 63301
(636) 947-4700 (Phone)
(636) 947-1743 (Facsimile)
dhamilton@hamiltonweber.com
jkilper@hamiltonweber.com
jhowell@hamiltonweber.com

ATTORNEYS FOR PLAINTIFF
*Spire STL Pipeline*

## CERTIFICATE OF SERVICE

The undersigned certifies that a true and correct copy of the foregoing document was served this 22nd day of July, 2020, by:

\_\_\_\_\_ Hand delivery
\_\_\_\_\_ United States mail, postage prepaid
\_\_\_\_\_ Electronic transmission (E-mail);
__X__ Notice of Electronic Filing pursuant to Fed.R.Civ.P. 5(b)(2)(E), to:

Jordan Walker, Esq.
Sever Storey, LLP
881 3rd Avenue SW, Suite 101
Carmel, IN 46032
Jordan@landownerattorneys.com
*Counsel for Defendants*
*Alan and Sharon Poggemoeller*

/s/ David T. Hamilton