# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MISSOURI
# EASTERN DIVISION

| | | |
|---|---|---|
| SPIRE STL PIPELINE LLC, | ) | |
| | ) | |
| Plaintiff(s), | ) | |
| | ) | |
| vs. | ) | Case No. 4:18-CV-1327 SRC/DDN |
| | ) | |
| 3.31 ACRES OF LAND, et cet., et al., | ) | |
| | ) | |
| Defendant(s). | ) | |

## REPORT OF THE COMMISSION TO DETERMINE JUST COMPENSATION

**I.     INTRODUCTION**

This is an eminent domain case filed by plaintiff Spire STL Pipeline LLC. Under the Natural Gas Act, Spire has the authority to take an easement on private property for the purpose of constructing a natural gas pipeline on various parcels of real estate. The Court appointed this Commission pursuant to Federal Rule of Civil Procedure 71.1(h)(2) to determine the just compensation payable by Spire to each defendant. The subject of this Report and Recommendation is the Schaeffer property, also known as Tract No. MO-SC 312.000. The Court held an evidentiary hearing on June 21-25, 2021, which all the commissioners attended in-person and remotely. At the beginning of the hearing and at the conclusion, the Court instructed the Commission as to its duties. In conducting its deliberations, the Commission adhered to the Court's instructions. Those instructions can be found on the Court's docket.

After consideration of the testimony, the exhibits offered into evidence, and the arguments of counsel for both parties, the Commission makes the following findings in accordance with Rule 71.1(h)(2)(D).

**II.     RELEVANT STANDARD**

Pursuant to the Court's instructions, the Commission determined just compensation by finding the different between the fair market value of the entire property immediately before it was taken on December 17, 2018, and the fair market value of remaining property immediately after the taking on December 17, 2018. In determining the fair market value, the Commission relied on the highest and best use of the property, meaning the most profitable and advantageous use the owner may make of the property interest even if the property interest is presently used for a different purpose or is vacant, so long as there is a market demand for such use.

As the Court instructed, under Missouri law, the defendant landowner has the burden of proving by the greater weight of the evidence the amount of just compensation to which the landowner is entitled. This means the landowner has the burden of causing the Commission to believe that the respective proposition is more likely true than not true.

The Commission also considered whether defendant is entitled to payment for the cost to restore. In determining this, the Commission considered whether the permanent easement caused a difference in the condition of the property from the pre-taking condition to the after-taking and after construction condition. This amount, if any, is not included in the amount of just compensation.

**III.    FINDINGS OF FACT**

After deliberations by all of the Commissioners, the Commission makes the following findings of fact:

1.      The date of taking of the Schaeffer property is December 17, 2018.

2.      The highest and best use of the property before the taking is agricultural. The highest and best use of the property after the taking is agricultural.

3. The total acreage of the property before taking is 135.20 acres.

4. The total fair market value of the entire parcel (land) before the taking is $1,352,000.00 and the total value of the improvements is $14,000.00, for a total value of the entire parcel with improvements before the taking of $1,366,000.00.

5. The permanent easement taken is 1.67 acres.

6. The temporary workspace easement is 1.340 acres.

7. The additional temporary workspace easement is 0.840 acres.

7. The total fair market value of the entire parcel with improvements after taking is $1,350,970.00.

8. The Commission's calculation is set forth below.

## IV.   DETERMINATION OF JUST COMPENSATION

### Land and Improvements-Value Before Taking

| Description | Size | $ Per Acre | Total |
|---|---|---|---|
| Entire Parcel (land) | 135.20 | $10,000.00 | $1,352,000.00 |
| Improvements | n/a | n/a | $14,000.00 |
| **Total Value** (Before Taking) | | | **$1,366,000.00** |

### Land and Improvements-Value After Taking

| Description | Size | $ Per Acre | Total |
|---|---|---|---|
| Entire Parcel (land) less 1.67 acres | 133.53 | $10,000.00 | $1,335,300.00 |
| Permanent Easement Area | 1.67 | $1,000.00 | $1,670.00 |
| Improvements | n/a | n/a | $14,000.00 |
| **Total Value** (After Taking) | | | **$1,350,970.00** |

### Temporary Construction Easement and Temporary Workspace Easement

| Description | Size | $ Per Acre | Rental Rate | Term | Total |
|---|---|---|---|---|---|
| Temporary W.S Easement | 1.340 | $10,000.00 | 20% | 2 Yr. | $5,360.00 |
| Add. Temp. W.S. Easement | 0.840 | $10,000.00 | 20% | 2Yr. | $3,360.00 |
| **Total** | | | | | **$8,720.00** |

3

**Conclusion-Just Compensation**

| | |
|---|---|
| Value of Permanent Pipeline Easement | $15,030.00 |
| Total Market Rent for Temporary Easements | $8,720.00 |
| **Total Just Compensation** | **$23,750.00** |

The Commission finds the reasonable value of total just compensation is $23,750.00. The Commission came to this decision as follows.

**Appraisal Experts**

The Commission finds that the reasonable value of the land is $10,000.00 per acre. In addition to other evidence, the Commission relied on the comparable sales presented by plaintiff's expert appraiser Corey Sell, with particular attention placed on Comparable No. 3 in his appraisal report. This property was valued at $10,136.00 per acre, and had one ammonium pipeline and one gas pipeline present on the property. That comparable sale also had 94% tillable ground and was within close proximity to the subject property. The Commission also finds that comparable sale No. 5, set forth in the appraisal report of Corey Sell, is comparable to the subject property, in that it has two gas pipelines on the property, and is located in close proximity to the subject property.

Additionally, the comparable sale calculation in the appraisal report of defendant's expert appraiser, Donna Howard, concluded that the comparable sales described in her report had a median adjusted sale price of $10,260.00 per acre and she found that the market will support a rounded unit value of $10,000 per acre as the value of the fee simple interest in the land.

For these reasons, the Commission utilized the amount of $10,000.00 per acre in calculating the before and after value of the land, and in calculating the total market rent for the temporary easements, as shown above.

The Commission finds that the rental rate for calculating the total market rent for the temporary easements should be 20%, after taking consideration of all of the evidence presented. With regard to this finding, the Commission found that the approximate rental rate of 10% to 12% shown in the appraisal report of Cory Sell only minimally compensates a landowner for the loss of use of the temporary easement area and that a 20% rental rate is a more appropriate rental rate to adequately compensate the landowner for the temporary loss of use of the easement areas.

Defendant's appraisal expert, Donna Howard, concluded in her appraisal report that the southern remainder of defendant's property, consisting of 106.33 acres, had been damaged after the construction of the pipeline. In her report, she states that she reviewed the report provided by Berning Soil Services, LLC (the "Berning Report") as well as a declaration signed by the tenant farmer who is familiar with the property. Additionally, she considered a University of Missouri Extension report relating to Missouri farmland values titled "Missouri Farm Land Values Opinion Survey-2018". From that report, Ms. Howard found that the decrease in market value for good cropland to average cropland statewide declined by 20%, and from average cropland to poor cropland by an average of 23.35%. Based upon these factors, she reduced the value of the southern remainder by 23%. She reduced the value per acre from $10,000.00 to $7,700.00. Therefore, she reduced the value of 106.33 acres by a total of $243,800.00. The Commission notes that this amount represents 87% of the total damage claimed by defendant in this case, which is $280,000.00.

On cross-examination at the hearing, Ms. Howard identified three factors upon which she relied in reducing the value of the 106.33 acres in the southern remainder. Those three factors were drainage, access, and soil quality. With regard to drainage, she testified that she assumed plaintiff had no obligations to remedy any drainage issues post-construction. With regard to access, she

5

stated she was not aware that Anthony Simon, the person who farms the subject property, has indicated that the property could be accessed in all areas for farming purposes. She stated she did not know if the access road was still inaccessible. She testified that she did not know, even at the time of her testimony at the hearing, whether the access road was open that day. She stated she had no knowledge of any access issues relating to the property except for what she had been told by other parties.

With regard to soil quality she testified that she relied on the Berning Report, which stated that topsoil is mixed with subsoil in several sites. On cross-examination, she admitted that in her deposition, she stated that soil quality can be a factor in reducing the value of the remainder, but because she did not have any data on soil quality, the factors on which she relied for reducing the value of the southern remainder were only drainage and access. She also admitted on cross-examination that soil mixing was not done on the 106.33 acre southern remainder. She testified that she did not know about any crop yield information and data for the property, either before or after her appraisal report.

Also on cross-examination, Ms. Howard admitted that (i) she did not have any FERC experience in appraisals, (ii) she did not review the FERC certificate, (iii) she was not aware of regulations at the time of the appraisal, (iv) she did not know how much rain had fallen the night before her site visit, (v) she was not aware of restoration of the property before the visit, (vi) she did not review the complaint filed by plaintiff in this case, (vii) she did not talk to the owner of the property, (viii) she did not talk to the farmer, Anthony Simon, and (ix) she did not talk to Gerald Berning.  Ms. Howard also agreed that there are numerous pipelines in that area and that some of her comparable sales used in her appraisal report have pipelines crossing through them.

Finally, she stated that she cannot draw the general conclusion that a pipeline depresses the value of farmland in Northern St. Charles County.

For these reasons, the Commission finds that Donna Howard, defendant's appraisal expert, did not offer credible evidence to support a conclusion that the southern remainder of the subject property, 106.33 acres, was damaged by the construction of the pipeline. The Commission rejects her conclusion that the value of the southern remainder was damaged by 23%.

### **Soil Experts**

Defendant presented testimony, through their expert Gerald Berning, that installation of the pipeline impacted the subject property of Defendant by causing soil compaction, loss of topsoil, mixing of topsoil and subsoil during construction, and changes to soil drainage. The Commission has considered each of these assertions.

**Soil Compaction.** Plaintiff's expert, Aaron DeJoia, testified that, in his professional opinion, there are no visual or physical indications of soil compaction in the right-of-way area on the subject property. Mr. DeJoia testified that defendant did not take measurements of soil compaction, either through the use of a cone penetrometer or by soil bulk density measurements. Mr. DeJoia also testified that Duraroot, where Mr. DeJoia is the Principal Scientist, conducted compaction tests on the right-of-way area during and immediately following construction. Table 4 of Mr. DeJoia's Report (the "DeJoia Report") documents the results of the compaction measurements.

Mr. Berning testified that soil compaction can be seen through visual observation of the soil. Mr. DeJoia states in his report that the soil structure that Mr. Berning describes, within the soil pits evaluated by Mr. Berning, does not indicate that either platty or angular blocky

7

structures are present.  The DeJoia Report concludes there is no visual evidence that the soil on the right of-way is compacted. Additionally, the only measurements taken of soil compaction indicate that the property underwent decompaction at the end of September, 2019. The DeJoia report states that the property was evaluated for compaction in five different areas, and at each area the soil strength in the undisturbed portion, the travel lane, the ditch line, and in the spoil areas was compared. At four of the five undisturbed locations, compacted layers of soil were identified. The report shows that no compacted layers were identified in the other locations within the right-of-way boundary. The Commission finds that the decompaction efforts utilized by plaintiff in the right-of-way area successfully decompacted the affected soil following construction.

**Loss of Topsoil**. The DeJoia Report indicates that excavating native soil and then replacing it with non-native soil should be limited to only those situations where the chemical and physical properties of the soil exclude all plant growth. Mr. Dejoia testified that the Soil pH, Soil Organic Matter, the Cation Exchange Capacity, and the nutrients Phosphorus and Potassium from samples taken on the right-of-way and off the right-of-way have very similar properties and the chemical differences are not significant.  In his report, he states that the soils are chemically equal. His report states that, in his experience, no reduction in crop yield will occur based on the soil chemistry analysis provided by defendant.

The DeJoia Report indicates that removing native soil and replacing that soil with foreign topsoil is not advisable because it would require hundreds of trucks to haul off the current high-quality soil and then replace it with other soil. The imported soil will not function in the same manner as the native soil and could have herbicides and weeds that will impact future crop yield.

**Topsoil Mixing**. Based upon the soil fertility and chemistry results for the property, obtained by Mr. Berning, the DeJoia Report concluded that the topsoil and subsoil have very similar properties and the chemical differences are not significant. It indicates that any differences would not indicate a reduction in crop yields and that no crop yield reduction will occur based upon soil chemistry differences between any topsoil and subsoils that were mixed in the right-of-way area. The Commission notes that Mr. Berning, defendant's expert, testified under cross-examination in the hearing that the test results of the soil chemistry and nutrients between the topsoil and the subsoil were very similar to each other.

**Soil Drainage**. The Berning Report states that it appears that preconstruction drainage patterns *may* have been modified allowing for wet spots in the disturbed areas. It appears from the report, and from his testimony, that he did not do any studies or additional analysis of the drainage issue other than using Google Earth Pro to observe historical aerial photography of the property.

The DeJoia Report concludes that the soils on the property are floodplain soils which are subject to periodic flooding. This flooding can have the effect of scouring the fields and removing soil and then depositing that soil within the same field, depending on the flooding event. The report states that the flood events can cause variability in soil types, topsoil depth, and topography within the same field. During 2019, a flood event occurred on the property. The DeJoia Report concludes that it is highly likely the topography and soil drainage properties of the property changed due to the flood in 2019. He points out that Mr. Berning provides no evidence that construction of the pipeline, as opposed to the flood which occurred in 2019, impacted the drainage at the site.

The Commission finds that the assertions in the Berning Report, that the preconstruction drainage patterns of the property may have been modified by the construction of the pipeline, allowing for wet spots and drainage issues is speculative, and not supported by any study, test, or other evidence presented by defendant. Thus, the Commission bases its conclusions on the DeJoia Report over the Berning Report.

**No Award for Restoration**.  For the above stated reasons, the Commission has not awarded any compensation for restoration or repair of the property.

### Expert Witness Credibility and Weight

The Commission finds that expert witness Aaron J. DeJoia is highly qualified to offer testimony on the issue of soil matters as they relate to pipeline construction projects. This witness has published various articles and studies, including a 2011 article titled "Evaluating Agronomic Characteristics of Surface Soils on a Pipeline Right of Way." Mr. DeJoia testified that the Soil pH, Soil organic matter, the Cation Exchange Capacity, and the Nutrients Phosphorus and Potassium from samples taken on right-of-way and off right-of-way have very similar properties and the chemical differences are not significant. In his report, he states that the topsoils are chemically equal. His report states that, in his experience, no reduction in crop yield will occur based on the soil chemistry analysis provided by the landowner. The Commission believes this conclusion is of significant importance in the case, as the highest and best use of the property is agricultural, with crop yields and productivity of central importance to the value of the property. The Commission finds that the qualifications and experience of Mr. DeJoia were a better match for the subject matter in this case than those of Mr. Berning, and therefore the opinions and expert testimony of Mr. DeJoia are entitled to greater weight in this case.

As stated above, the Commission finds that the expert opinion testimony of appraiser Donna Howard, with respect to her conclusion that the southern remainder of the property in the amount of 106.33 acres had been damaged by 23%, was not supported by sufficient evidence or investigation, and the Commission finds that the expert appraisal testimony and opinion of Corey Sell is of greater weight in this case.

## Other Considerations

**Crop Yields**. The Commission took into consideration that the crop yields for the subject property for 2020 were equal to or slightly greater than the crop yields for 2018. This was shown in plaintiff's Exhibit 38 A.

**Access to the Property**. In the hearing, plaintiff called Anthony Simon. He testified he farms the subject property. Mr. Simon testified that he can access the subject property from Highway 94 and also from the farm access road, which is the rock gravel road from Portage Road into the property. He testified that if there is significant water on the property, there is a wet area that can prevent access to the south side of the parcel. However, that it is a result of drainage from the neighbor's farm, it is a low spot that ties into a drainage ditch south of the pipeline, and it is a natural drainage area. He testified that during construction, he contacted plaintiff to get access to the grain bins to remove the grain, and in response plaintiff put down gravel on the access road, which remedied the access issues. The Commission found the testimony of Anthony Simon to be particularly credible, as he is the person who presently farms the property, and has a business relationship with defendant, the owner of the subject property. Despite this relationship with the owner of the property, he testified he can successfully access all portions of the property for farming purposes, both from the access road off of Portage Road and from Highway 94.

For all of these reasons, the Commission concludes the reasonable value of total just compensation is $23,750.00. The Commission further concludes defendant is not entitled to any cost to cure.

The conclusions of the Commission in this case were, in all relevant aspects, unanimous.

For the Commission:


/s/ Thomas Lang/s/ Dave Rohlfing
Thomas LangDave Rohlfing
Commission ChairMember


/s/ Edward Dinan/s/ John Matlick
Edward DinanJohn Matlick
MemberMember


/s/ Timothy R. Huff
Timothy R. Huff
Member